JOHN YOUNG of ROBERT vs. JOHN ROBINSON AND OTHERS—
*December*, 1840.

A devise of all the money remaining in the hands of my executors, after payment of debts and legacies, "to the surviving children of my deceased brothers J. & W., to be equally divided among them, share and share alike," will pass the residuum of the testator's money, to the children of J. & W. who survived at the death of the testator, in exclusion of the descendants of such of the children of J. & W. as may have died during the testator's life time.

The death of one of the children of J. or W. during the life of the testator, did not occasion the legacy to lapse as to his part, at common law.

The act of 1810, ch. 34, sec. 4, applied only to cases where legacies would have lapsed or failed to take effect, by the death of the legatee, where such legatee *was named* in any last will and testament.

The act of 1832, ch. 295, was not designed to change any of the rules for the construction of wills, but simply to provide for such cases of legacies and devises, as by the rules of law lapsed or failed to take effect by the death of the devisee or legatee in the life time of the testator, and where *not* being named, the devisee or legatee was mentioned, described, or in some manner referred to, designated, or identified in the will.

APPEAL from the Orphans' Court of *Washington* County.

*John Young of Robert* of the State of *North Carolina*, *John Young of Illinois*, *William Young of Kentucky*, and others, non-residents, children and representatives of *William Young*, son of *William Young*, *John Young*, and others, children and representatives of *William Young*, son of *John Young*; *Ulysses Young*, and others, children and representatives of *Abraham Matthew Young*, son of *John Young*, by their petition represented, that *Doctor Daniel Young*, late of *Washington* county, *Maryland*, departed this life on the 23rd July 1838, having made and executed his last will on the 10th August 1823, with two codicils thereto, the one dated 1st February 1837, the other the 9th June 1838, which hath been duly proved and recorded, and a copy of which is herewith exhibited.

This will, after directing his executors to sell all his personal property, except his negroes and certain real estate, proceeded as follows—

"It is my will and desire that the amount of the proceeds of the sale of said real and personal property, together with

the money I may have at the time of my death, or that then may be due or owing to me, either by book debts, obligations of any kind, or bank stocks, or judgments, shall be disposed of by my executors in the following manner, viz:

· *Imprimis*—I give and bequeath to my niece *Jane Milligan*, (who now lives with me,) the sum of $1500, and certain household furniture, and a slave.

*Item*—I give and bequeath to *John Lind Young* (now living with me,) the sum of $500, for the purpose of assisting his education.

*Item*—I give and bequeath to the managers of the *Female Charity School* in *Hagerstown* $100, to be applied by them to the education of poor children.

*Item*—I give and bequeath to my nephew *William Milligan*, the sum of $500, or to his heirs, if he should be deceased.

*Item*—It is my will and desire that all my negroes shall be entitled to their freedom the in course of three months after my decease, or sooner, at the discretion or will of my executors.

And lastly, it is my will and desire that all the money remaining in the hands of my executors arising from the sales of my real and personal property, and from the sale of my bank stock, and from all the debts, judgments, specialties, book debts, that are collected that are due my estate, after the payment of the legacies before mentioned by my executors, I by these presents give and bequeath all the money remaining in the hands of my executors to the surviving children of my deceased brothers *John* and *William Young*, to be equally divided among them, share and share alike."

The codicil of 1st February 1837, gave specific legacies to *John Young Lind*, and *Jane Milligan*, *Isabella Milligan* and *William Milligan*, and to one of his servants, of books, plate, money and furniture.

The codicil of the 9th June 1838, confirmed and ratified the will and first codicil, and appointed *John Young Lind* co-executor with *John Robinson*, who had been appointed sole executor by the original will.

The petition further alleged that there were other children of *John* and *William Young*, who died *before* the date of the said will. But your petitioners are advised and do insist that according to the true construction of the said will and codicils, and by the law and statutes of *Maryland*, your petitioners are entitled to be admitted to a distribution of the said fund, as children and representatives of their deceased parent; that your petitioners, children of *William Young of William*, and also the children of *Mary Young*, a daughter of said *John Young*, (brother of the said testator) which said *Mary* intermarried with the said *William Young* (*of William*,) and also departed this life subsequent to the date of said will, and before the death of the testator, in whose right the said petitioners also claim a distribution. And further, that the said *William Young* (*of William*) had two other children, *Robert* and *James*, who died before their said father *William Young*, each leaving widows and children, namely, *Franklin*, *Mary*, *William*, *George*, *Nancy* and *Edward*, *children* of the said *Robert*, and *William*, *Caroline* and *Richard*, children of the said *James*. To the end therefore, that your petitioners may be admitted to a distribution of the said residuary fund, your petitioners pray that a citation may issue to the said *John Robertson* and *John Y. Lind*, executors as aforesaid, and the said *James Cavan* and others, commanding them, &c.

The answer of the executors and *James Cavan* and others, alleged, that they believe said petitioners are the grand-children of *John Young* and *William Young*, the deceased brothers of the said testator, mentioned in the clause of his will quoted in said petition, and the children of the persons named in said petition, who as these executors have been informed and believe departed this life subsequently to the date of said will, but before the death of the said testator. They admit all the other facts stated in said petition, and state that they have a large amount of money, to wit, the sum of $17,000, belonging to said deceased estate, which they are ready and anxious to account for and distribute according to the directions, and true construction of said will, and the laws and statutes of *Mary-*

*land;* that they have been advised that the only true distributees of the funds now and hereafter to be in hand, and bequeathed by said clause, are the children of said *John* and *William Young,* mentioned in said clause, who survived the said testator, and who are named in said petition, but their executors have no interest in this matter beyond a faithful performance of the trust reposed in them, and are desirous for their own security and protection, to have for the distribution and payments they shall make, the sanction of this court, and such other court or courts to which the parties interested in the fund may see proper to resort for the final settlement of the principal question in controversy.

And the said *James Cavan* and others, in answer to said petition, also admit what is stated in said petition with regard to the devise or bequests of said *Samuel Young,* late of *Washington county,* and State of *Maryland,* deceased, and as to the names, members and relationship of said petitioner, and the deaths of their parents; but would for greater particularity state, that *William Young of William,* and *William Young of John,* parents of a part of your petitioners, both departed this life within the interval between the date and execution of the last of the codicils to said will and the death of the testator; the parents of the remaining petitioners having died at periods between the date and execution of the will and date of the first codicil thereto. But while these respondents thus admit the facts stated in said petition, they deny that the petitioners have any right to, or ought to be admitted to any distribution of the funds bequeathed by said clause of said will and codicil, and that these respondents are the only true legatees, they being the only surviving children of *John Young* and *William Young,* brothers of said testator, at the time of said testator's death, which occurred on the 23rd July 1838, &c.

On the 2nd December 1840, the orphans' court, (KELLER, HEZLETINE and WEBER, Justices,) ordered, that the said executors proceed to state an account of the sum in their hands, and that the register distribute the same equally among the said five respondents, to wit, &c., who in the judgment of this court,

are entitled to said fund in the above proceedings mentioned, to the exclusion of all and every of said petitioners.

The petitioners appealed to this court.

The cause was argued before STEPHEN, ARCHER, and CHAMBERS, J.

The acts of 1810, ch. 34, sec. 4, and of 1832, ch. 295, were the foundation of the appellants claim. The act of 1810, ch. 34, sec. 4, provides, "that from and after the passage of this act, no devise, legacy or bequest, shall lapse or fail of taking effect by reason of the death of any devisee or legatee named in any last will or testament, or any codicil thereto, in the life time of the testator, but every such devise, legacy or bequest, shall have the same effect and operation in law to transfer the right, estate and interest, in the property mentioned in such devise or bequest, as if such devisee or legatee had survived the testator."

The act of 1832, ch. 295, is as follows: A supplement to the act passed at December session of the year 1810, ch. 34, relating to devises and legacies.

Whereas, doubts are entertained as to the proper construction of the fourth section of the act to which this is a supplement, and whether the devisees or legatees whose death is provided for by the said section, must be devisees or legatees actually and specially named in the last will and testament or codicil—therefore, Be it enacted by the General Assembly of Maryland, That all devisees or legatees shall be deemed and taken to be within the provisions and true intent and meaning of said fourth section of said act, who are or shall be, either actually and specially named as devisees or legatees, or who are or shall be mentioned, described, or in any manner referred to, or designated, or identified as devisees or legatees in and by any last will and testament or codicil.

PRICE for the appellants.

"Children" and "surviving children" stand in the same category in this connexion, and mean the same thing. The case

is one therefore of a devise "to the children of my brothers, *John and William Young*," and the question is, whether the children in existence *at the date of the will*, or those who were living *at the death of the testator*, are to take under this will? And this is the only question in the case.

The rule in *England*, it is freely admitted, would give the whole of this property to such of the legatees as might happen to survive the testator, in exclusion of the descendants of those who died during his life time. But it was to change this rule, and to convey the bounty of the testator to the children of such of his legatees as might die before himself, that the acts of 1810 and 1832, were passed. And if the Legislature of *Maryland* have not in point of fact effected that change, it is because the *English* language did not afford the means of doing so, for they have brought into requisition every term which could well be applied to the subject.

By the rule in *England*, if a father make a will and give his property to his children, either by name or in general terms, all such as die during his life, and their descendants, are shut out entirely, while those who survive him, get the whole. And such is the law of *Maryland* at this day, if the acts alluded to have not changed it. It is worthy of remark, that the rule thus established in *England* does not profess to have reference to the intention of the testator, but is founded upon those notions of convenience, in the distribution of property, which prevail in that country. It is placed upon this ground expressly in the *English* books. The intention, were that permitted to prevail, would, it is believed, in every case be the other way. For when a man sits down to write his will, especially if the condition of his bodily health be such as to place the prospect of death immediately before him, he has reference to persons and things as they then exist around him, and not to their possible condition at any future time.

The rule however which has been deemed wise and convenient in *England*, has not met with acceptance on this side of the Atlantic. In *Pennsylvania* no devise or bequest to "a child or other lineal descendant of the testator," shall be de-

feated by the death of the devisee in the testator's life time. *Purd. Dig.* 410.    8 *Serg. and Rawle*, 71.    In *South Carolina* the same change has been made in relation to a bequest to "any child of the testator."    *Brev. Dig.* 336.    In *Virginia* to "any child or other descendant of the testator."    1 *Rev. Co.* 376. In *Massachusetts* to "any child or other relative of the testator."    *Rev. Stat.* 419, *pl.* 24.    And it is not doubted that similar provisions would be found in the laws of most of the States, if we had time and opportunity to examine them.    Now would a devise by a father, in any of the States whose laws have been cited, to all of his children, without naming them, fail of taking effect as to any one of them, by the accident of its death in his own life time?    If so, every man is prepared to say at once, that in every such case the plain purposes of the legislature would be thwarted by the courts.    But *Maryland* has not limited her abrogation of the *English* rule, to the mere case of children or kindred—she has made the change complete, by applying it to all cases.    And the doctrine of *Maryland* is the sensible doctrine, for that which may be deemed a wise construction in relation to a man's own family, ought to be deemed a wise construction of the same words, in reference to the family of any other man.

. The act of 1810, ch. 34, sec. 4, provides, that no devise or bequest shall lapse or fail of taking effect, by reason of the of the death of any legatee *named in the will*, in the life time of the testator.    The explanatory act of 1832, ch. 295, after reciting, that doubts had been entertained, whether the original law was intended to embrace those bequests, merely in which the legatees were "actually and specially named," declares, that all devisees or legatees shall be deemed to be within the provisions of the first law, who are either actually named, or who are mentioned, described or referred to, in any last will or testament.    The two laws when blended together, as to be correctly understood, they must be, would read thus. That no devise, legacy or bequest, shall lapse or fail of taking effect, by reason of the death of any devisee or legatee, either actually and specially named or mentioned, described, or in

any manner referred to, or designated, or identified, in any last will or codicil, in the life time of the testator, but every such devise or bequest shall have the same effect and operation in law, as if such devisee or legatee had survived the testator.

The way to arrive at the meaning of a law, is to ascertain its object. When that is known with certainty, the construction of the law and the effect to be given to it, cannot be doubtful, whatever the words may be. The act of 1810, comprehends in terms, such bequests only as named the legatee. The act of 1832, was passed expressly to comprehend all such bequests as merely described in general terms, but did not name the legatee, and to subject both classes of cases to the same rule of construction. The preamble declares such to be the sole object of that law. The construction therefore is to be the same in all respects, as if the children of *John and William Young*, in existence at the time of the will was made, were "actually and specially named" in it. It was the sole purpose of this law to place them in that precise position before this court.

What then is the argument by which this view of the question is met? It is, that this being a bequest to "children," those only can take, who according to the rule in *England*, may be found to answer that description at the time of the testator's death. But it is submitted with great confidence, that the very rule by which the legatees are thus attempted to be ascertained, has been repudiated by the Legislature. Such a construction can only be reached by resorting to the condemned rule.

The term "children" comprehends a plurality of persons, without identifying any individual, and it is no doubt true, that the children who are existing at the date of the will, and those who survive the testator, equally answer that description. But what says the act of 1832? It declares, that all legatees answering such description, shall be within the provisions of the act of 1810, precisely as if they were actually and specially named in the bequest—and the act of 1810 declares, that no such bequest shall lapse or fail of taking effect by reason of

the death of any such legatee in the life time of the testator; but shall be as effectual to pass the thing bequeathed as if the legatee had survived the testator. It cannot be perceived therefore, how the construction contended for, can be given. It comes to this, that the act of 1832 does not comprehend the present case, because the legatees are not specially named. The argument is built upon that foundation, and asserts in effect, that the act of Assembly does not comprehend the very evil it was made to cure.

It is said, that there are persons here to take under the terms of the bequest—that though part of the legatees may have died, yet as the survivors are still the "children of *John* and *William Young*," the words of the will may be gratified by giving it to them. But may the words of the act of Assembly be gratified by such a disposition of this property? The meaning of the Legislature is not left to conjecture—it is plain and palpable. The children are placed by the law upon the same footing, as if they were actually named. The legacy is distributive at the time of its creation, each child being a separate and independent legatee. If *Matthew* and *John* have died, their legacies by the positive words of the law, shall take effect in the same manner as if they had survived the testator. And how is this to be done? By cutting them off entirely, and giving the whole to the survivors—and this, because the survivors are still the children of *John* and *William Young*.

It is again said, that these acts of Assembly have nothing to do with this case, because it is not a case in which the legacies would lapse according to the English law. The answer is, that the act of 1810, standing alone, comprehends every instance of lapsed legacy, for such is the declared purpose of that law upon its face. To be satisfied that this is so, it is only necessary to read the act. And then it may be asked, why was the act of 1832 ever passed? If it has not enlarged the original law, nor added one syllable to its provisions, what could have been its object? The simple purpose of the Legislature in passing the explanatory act, was to provide, that all cases within the same reason, should be within the same

rule, for it cannot be conceived, why one measure of justice should be meted out to him who is named, and a different measure to him who is plainly comprehended though not named in a will. If the legislature have not placed both upon the same footing, then any future legislature may despair of doing so, for all the terms applicable to the subject have been already exhausted.

It seems to be supposed, that this court will exert its ingenuity to devise some possible mode, by which some possible operation, can be given to the act of 1832, which shall pass by the case at bar, and if such were the business of this tribunal, and it were no part of its duty to give a fair and sensible exposition to the legislative will, it might still be asked, what manner of case could be imagined as coming within its provisions, with which this case would not naturally associate itself, as one of the same class? There are but two classes of bequests to which these statutes *can* apply—those in which the legatees are named, and those in which they are described. The act of 1810 comprehends the first class in terms, and lest it might not by construction include the second, the act of 1832 was passed, having no other object than to take care, that the second class of cases should not be omitted.

The whole argument for the appellees, lies in the distinction between a legacy in which individuals are designated, and one in which a class of persons, as a class, is supposed to be intended. For example, if the bequest be "to the ten children" of a brother, or of the testator himself, it is held to be a designation of individuals, and the case is within the operation of these acts of Assembly, and then, whether the legatees die or not, the legacies all take effect. But if the bequest be to "the children," leaving out the number, the case is then not within the acts, and such only are permitted to take as answer that description at the death of the testator. Now it must not be overlooked, that in *England*, if a testator with a family of ten children, gives his whole estate to them by his will, the legacies of all such as die within his life time fail of taking effect, whether the legatees be designated as indivi-

duals, or merely referred to as a class—in the one case it is a technical lapse of the legacy. *Ward on Leg.* 163. In the other, the bequest is supposed to be made upon condition, that the legatee shall survive the testator. *Ward on Leg.* 123. It comes then simply to this, did the Legislature of *Maryland*, in passing these laws, intend to declare, that when a testator shall designate his ten children as the objects of his bounty, none of them shall be deemed to forfeit that bounty, by the accident of being called off during his life time, but when he shall not designate them, it shall be deemed a different case entirely, and be perfectly just and proper, that the same persons in the same contingency, shall forfeit the same bounty? In *England*, as it has been shown, this distinction has no influence whatever, upon the survivable quality of the bequest; there, legacies of both descriptions fail equally of taking effect; how then, can that distinction be made the means here, of separating these cases in which the bequest shall, from those in which it shall not, survive? Did the makers of those laws intend to preserve what is at best, a senseless distinction, and did they moreover intend to apply that distinction, to a case to which in *England*, it could have no application at all?

It is supposed, that the legislature did not intend to change the established rules of law; but for what other purpose was the act passed? Can it be imagined, that they would enact a remedial statute, and still intend to leave the law as they found it?

WEISEL for the appellees.

At the date of the will 1823, there were ten children living, before the date of the will, some brothers had died leaving children. The petitioners are grand-children, of children who died between the date of the will and death of testator, and these appellants cannot claim under the acts of 1810 or 1832. The will applies to the classes of children, as they existed at the time of the testator's death. *Roper on Leg.* 69, 72. The word children does not embrace grand-children. There is nothing to identify the survivors; and the words, surviving children, naturally refer to the death of the testator. The term

children or surviving children relate to children in *esse* at death of the testator. 2 *Bro. C. C.* 658. 2 *Cox C.* 190. 4 *Harr. & John.* 539. *Pres. on Leg.* 190.

The objects of the testator's bounty are to be ascertained at his death. This is the general rule. If a different construction is adopted, it is by force of the express terms of the will. 4 *Paige, C. R.* 47. 3 *Swan.* 339. 4 *Russ.* 573. 4 *Mer.* 199. 3 *B. C. C.* 404, *no. a.* All living at the death of the testator, answer the description, and so take. 1 *Rop. Leg.* 331. This legacy does not lapse as a legacy to joint tenants. A bequest *nominatim* lapses, but the exception in 1 *Rop. on Leg.* 333, covers the case at bar. There is this distinction between a legacy to a class, and to a particular person, in the latter, death occasions a lapse; but not so in the former. To come at the point of this case, the word children cannot mean grand-children. 3 *Ves. & Bea.* 69. *Vernon* 106. 1 *Edw. Rep.* 354. To make the word children include grand-children, the testator must show such to be his intent by express language; construction will not so enlarge that term.

The devise is, to the surviving children share and share alike. Will the acts of 1810 and 1832 enlarge that devise? Will they make a lapse legacy, when it did not lapse before, and alter rights. The object of those acts is to prevent lapsing. The act of 1810 applies to specific legacies, and covers devises to particular persons—individuals only after 1810 and and before 1832, a legacy to one not named would lapse. That is the construction of 1810. The act of 1832, enlarges the act of 1810: affords further but not full remedy. Suppose one not named, but identified, as a devise to his nephew not named or referred to in any manner. The act of 1832, will not aid the case, for it does not mean a general reference. The party intended, must be so named, identified or described in the will, that the court cannot err; that will prevent a lapse in cases when it would have lapsed before. The act of 1832 does not apply here. The legacy being to persons living at the death of the testator, some one must be then alive of the class mentioned to take. The words of the will are not descriptive,

so neither act can help the petitioners. *7 Gill & John.* 63, and the decree should be affirmed. The act of 1832 is a supplement. It is not retroactive. *Dwarris on Stat.* 680, 681, 730. The will is to be construed according to the legal course of distribution, and by its whole context. The testator meant, that those only should take who survived him.

W. SCHLEY for the appellees.

The words surviving children, as a rule of construction, import those who answer the description at the time of the distribution of the estate, or at all events, at the time of the testator's death. If this be so, the meaning of the testator is clear. The event gives the rule. It is a voice from the grave. When he gives to A, the intent is clear. When he gives to a class, the general rule applies, that he does not mean to give but to those who survive him. The *English* law is clear. It is said the act of 1810 controls the will. Then these petitioners claim under the acts, and not under the will. We say he can claim under neither the act of 1810 nor 1832. Those acts are not rules of construction, they are rules regulating the effect of a will. A grant to a dead man by a will is ineffective, if dead at date of the will, but if he dies after the date, then the act applies to him. Here we are upon the construction of the acts; if no lapsed legacy, the acts do not apply. The object of the law was to prevent lapse. *7 Gill & John.* 63, 9 *Gill & John.* 195. The testator must be presumed to have known the law. Then he knew he need not exclude the children then dead. There is no representation among collaterals beyond brothers and sisters children. The living children of brothers and sisters, are alone entitled to distribution. *1 Harr. & Gill* 474. The testator did not provide for the children of the deceased children of his brother; where a class is described, the word *surviving* refers to the death of the testator, and not to the date of the will. *8 Barn. & Cres.* 231. 15 *E. C. L. Rep.* 206. 13 *East.* 534, 35. 4 *Harr. & John.* 539.

ARCHER, J., delivered the opinion of the court.

It has been conceded, that anterior to our acts of Assem-

bly of 1810 and 1832, the devise in this case would pass the residuum of the estate, to the children of *John* and *William*, who survived at the death of the testator, in exclusion of the descendants of such of the children of *John* and *William*, as may have died during the life time of the testator.    It is presumed, that those persons of the described class, who survived the testator, were the only objects of his bounty, so that if an individual, answering the description of the bequest, who, if living at the death of the testator, would have been entitled to participate in the bequest, happen to die before him, that event, from the above presumption, will not occasion a lapse of any part of the fund.    1 *Rop.* 333.    The case therefore presented, is not the case of a lapsed legacy; or the failure of a legacy to take effect by the death of the legatee; there being persons at the death of the testator, answering the description, who by the established rules by law, are the objects of the testator's bounty.

It is said however, that the acts of 1810, ch. 34, and 1832, ch. 295, operate upon this case, and will enable the descendants of the children of *John* and *William*, who died before the testator, to come in for the share their fathers would have been entitled to, had they lived.

The act of 1810, ch. 34 sec. 4, applied solely to the cases where legacies would have lapsed, or failed to take effect by the death of the legatee, where such legatee was named in any last will or testament.  The recital of the supplement of 1832, shows that doubts were entertained whether the act extended to any case of legatees, unless they were specially named, and to remove the doubts, it enacted that all devisees and legatees shall be within the  meaning of the act of 1810, who are, or shall be  either actually and specially named  as legatees or devisees, or, who are, or shall be *mentioned*, described, or in any manner referred to, or  designated, or  identified, as devisees or legatees, in and by any last will and testament.

It is supposed, that this latter act makes the case before the court, as there are legatees described in the will, who died before the testator.    But we apprehend it was not the design

of the Legislature to change or alter any of the existing rules in the construction of wills, but simply, to provide for such cases of legacies and devisees, as by the rules of law lapsed, or failed to take effect, by the death of the devisee or legatee in the life time of the testator. Such a construction by no means renders the act of 1832 ch. 295 inoperative, but leaves a class of cases for it to operate upon; as where the legatee is not named, but only described or referred to, as was the case of *Castledon & Turner*, 3 *Atkins* 257, referred to in *Ward on Legacies*, 90.

The case before the court, it is true, is one in which the legatees are not named, but described; but still the legacies are not of that class, intended to be provided for by the acts. They are not lapsed legacies which fail to take effect, and are merged in the estate, but which pass to the persons answering the description in the will, at the death of the testator.

DECREE AFFIRMED.