GLENDORA TAYLOR *vs.* JOHN G. WATSON, and MARY E. WATSON, his wife, JAMES BRICE, and CATHERINE P. BRICE, his wife, and others.

*Testamentary Construction—"Family" construed to include the child of a deceased member of the Family — General and particular intent — Technical words—From what date a Will speaks.*

A testator, dying without wife or children, by his will made 16th of August, 1860, devised and bequeathed portions of his estate to all his nephews and nieces, and their descendants. The will contained the following clause: "1tem.—I give, devise and bequeath to my nephew, P. W, and his heirs, in trust for my nephew H. W, all the lands, &c. And it is my will that my said nephew P. W, hold all the said lands in trust for the use and benefit of my nephew H. W, during the natural life of the said H. W; and that he receive the rents, issues and profits thereof, and pay the same for the support of the said H. W and his family; and upon the death of the said H. W, I give and devise the same lands to his children and their heirs, equally, share and share alike —to be held, however by my nephew P. W in trust for their separate use and benefit as aforesaid; and it is my will, that upon the death of my said nephew H. W, leaving his wife J. W, that she shall have her dower in said lands during widow-hood as if the same had not been left in trust," &c. Subsequently on the 5th of January, 1864, the testator executed a codicil to his will, not altering however the above clause. The testator died in March, 1866. At the time when the will was executed, H. W had a wife, J. W and five children. One of the children died in November, 1860, leaving the appellant G. T her only surviving child, then an infant of about one year old. In January, 1868, H. W died, leaving his widow and the other four children. In construing the foregoing clause, it was HELD:

1st. That the ratification and confirmation of the will, except so far as altered by the codicil, does not affect its construction in this case.

2d. That the word "family," in the connection in which it stands, indicates that the testator designed his bounty to flow in the broadest stream among the descendants of H. W.

3d. That the testator, standing *in loco parentis* towards his several nephews and nieces and their children, made the dispositions contained in his will in the nature of a family settlement, and that G. T is entitled to

Taylor *vs.* Watson, *et al.*

the share which her mother would have had, if living at the death of the testator.

4th. That the trust terminated with the life of H. W, the *cestui que trust* for life, and the legal estate in fee vested in the children and grand-child of H. W, subject to the dower of his widow.

A will must be construed as a whole, the intention of the testator being gathered from all its provisions developed by the light of surrounding circumstances.

Where there is a manifest general intent, the construction should be such as to effectuate it, though, by such construction, the particular intent may be defeated.

Where the intention of a testator is plain, it will be allowed to control the legal operation of words, however technical.

The rule that the words of a devise shall be construed as speaking at the death of a testator, is subject to the paramount intention apparent upon the face of the will.

APPEAL from the Circuit Court for Queen Anne's County, in Equity.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON, ALVEY and ROBINSON, J.

*W. S. Waters,* for the appellant.

*M. & J. B. Brown,* for the appellees.

BOWIE, J., delivered the opinion of the Court.

Pere Wilmer, Esq., late of Queen Anne's county, Md., on the 15th of August, 1860, made his last will and testament, duly executed to pass real estate, and therein, " *inter alia,*" devised and bequeathed as follows :

" Item. I give, devise and bequeath to my nephew, Pere Wilmer and his heirs, in trust for my nephew, Henry Wilmer, all the lands, etc. ; and it is my will, that my said

nephew, Pere Wilmer, hold all the said lands in trust for the use and benefit of my nephew, Henry Wilmer, during the natural life of the said Henry, and that he receive the rents, issues and profits thereof and pay the same for the support of the said Henry Wilmer and his family; and upon the death of the said Henry, I give and devise the same lands to his children and their heirs equally, share and share alike—to be held, however, by my nephew, Pere, in trust for their separate use and benefit as aforesaid; and it is my will, that upon the death of my said nephew, Henry Wilmer, leaving his wife, Jane Wilmer, that she shall have her dower in said lands during widowhood, as if the same had not been left in trust."

At the execution of the will, Henry Wilmer, *cestui que use,* had five children, Margaret Taylor, (wife of George Taylor, and mother of Glendora, the appellant,) Mary Watson, wife of J. G. Watson, Catherine P. Brice, wife of James Brice, Fannie C. Wilmer, and Wm. Henry Wilmer.

Margaret Taylor died the 15th of November, 1860, leaving the appellant, born in October, 1859, her only surviving child or descendant.

The testator made a codicil to his will on the 5th of January, 1864, modifying it in certain items not material to this cause, and ratifying and confirming the rest, and died in March, 1866, leaving Henry Wilmer, his nephew, and his children, Mary E. Watson, Catharine P. Brice, Fannie C. Wilmer and William H. Wilmer, surviving him.

Margaret Wilmer, mother of Pere, died in the summer of 1864; Henry Wilmer, the *cestui que use,* died in January, 1868, leaving Jane his wife, and the four children above named, surviving him.

A bill having been filed in the Circuit Court for Queen Anne's county, in July, 1868, by the appellees, against the appellant and others, for the partition of the lands described in the above clause of the testator's will, the question arose, whether the same should be divided among the four surviv-

ing children of Henry Wilmer, or into five parts—Glendora Taylor taking a child's part in right of her mother.

The Court below decreed, that Mary E. Watson, Catharine P. Brice, Fannie C. Wilmer and William H. Wilmer, are seized of legal estates as tenants in common, in fee, in equal shares, of all the lands and tenements, etc., subject, however, to the dower in said lands of said Mary Jane Wilmer, mother of said Mary, Catharine, Fannie and Wm. H. Wilmer; and that the said Glendora Taylor has no estate or interest in the lands in question, etc.; from which decree this appeal is taken.

It is urged on behalf of the appellant, that there is no reason to be gathered from the will itself, or any evidence in the cause, why the child of the deceased niece should be excluded from the share her mother would have been entitled to if she had survived; but, on the contrary, every reason to suppose the testator desired and intended to include her in his bounty; that, it appears from the will and testimony, the testator, at the date of the will, had two nephews, two nieces, one grand-nephew, (the son of a deceased niece, Mary Elizabeth,) and also four great-neices, and two great-nephews, (children of a deceased niece, Fannie,) to all of whom he devised portions of his estate.

That, in the devises to the children of deceased nephews and nieces, terms were used which would have secured the estate to their issue or descendants, in case the great nephews or nieces had died before the testator, showing the testator intended that his bounty should be enjoyed by all their descendants.

Conceding that the terms employed in the particular clause of the will, under which the parties claim, generally apply to the children living at the death of the testator, and such as might be born before the period of distribution, they insist the authorities show, these rules of construction are controlled by the general intent of the devisor.

The appellees, relying upon the language of the particular devise in question, and the authorities in which the same, or

equivalent terms are construed, contend that all the children of Henry Wilmer, not living at the testator's death, and their issue, are excluded from participation in the benefits of the devise; that the devise is to a fluctuating class, wherein no lapse can occur, while any of the class remain, so that it is not within the provisions of Article 93, section 304 of the Code, and the ratification of the will, by the codicil, was a re-publication in law.

For some purposes, a will is considered to speak from its date or execution, and for others, from the death of the testator; the former, being the period of the inception, and the latter, that of the consummation of the instrument. 1 *Jarman on Wills*, 292.

It is a general rule, that a will speaks from the death of the testator, and not from its date, unless its language, by a fair construction, indicates a contrary intention. *Canfield vs. Bostwick*, 21 *Conn.*, 550; *Gold vs. Judson*, 21 *Conn.*, 616.

" The will also was held to speak from the death of the testator in reference to gifts to classes, or fluctuating bodies of persons; as to children, descendants, or next of kin, which apply to persons answering the description at the death of the testator, irrespectively of those to whom the description was applicable at the date of the will, but who subsequently died in the testator's life-time." 1 *Jarman on Wills*, 299, (287 *in mar.*)

All the authorities we have consulted, establish the proposition that the word " children " is to be construed as the "immediate offspring," and not inclusive of "grand-children," unless where there are no children, or necessary implication requires it. 2 *Jarman on Wills*, 70, (*in mar.*,) *and authorities in note* 1; 2 *Wms. Ex'rs*, 802.

Sir WM. GRANT said, in *Orford vs. Churchill*, " he never knew an instance where there were children, to answer the proper description, that grand-children were permitted to share along with them." 3 *Veas. & Beam.*, 59; 2 *Vern.*, 107; 4 *Ves.*, 692; 10 *Ves.*, 195, *cited in* 2 *Wms. Ex'rs*, 802.

In the present case, there being four children surviving, to answer the description and gratify the terms of the will, there is no room for implication or enlarging the words of the will by construction, as far as these terms of description are involved.

We have proceeded thus far, upon the hypothesis, that the clause of the will before cited, devising the lands, etc., upon the death of Henry, to "his children, and their heirs equally, share and share alike," contained the key to the devisor's mind, and was to be construed technically. The will however must be construed as a whole. The intention of the testator is to be gathered from all its provisions, developed by the light of surrounding circumstances.

The Court must put themselves in the place of the party making the instrument. 1 *Greenleaf's Evidence, sec.* 287.

The testator appears to have been possessed of a large real and personal estate. His heirs apparent and next of kin, were nephews and nieces, and the children of deceased nephews or nieces, for all of whom he manifests an anxious solicitude to make liberal provision, and towards whom, in legal parlance, he stood "*in loco parentis.*"

It is a familiar, well settled rule of construction, that the intention of the testator is to be collected from the whole will, "*ex visceribus testamenti,*" so as to leave the mind quite satisfied about what the testator meant. Where there is a manifest general intent, the construction should be such as to effectuate it, though by that construction the particular intent may be defeated. Technical words are presumed to be used in the sense which the law has appropriated to them, unless the contrary appears. But where the intention of the testator is plain, it will be allowed to control the legal operation of the words however technical. 6 *Cruise's Dig., Tit. Devise, secs.* 3, 4, 6.

These canons of construction were adopted, illustrated and exemplified by this Court in the case of *Chase vs. Lockerman,* 11 *G. & J.,* 205.

Taylor *vs.* Watson, *et al.*

The main subject of consideration was the residuary clause distributing a large portion of the testator's property in these words, viz : " The residue, etc., to be equally divided by them (his executors) amongst my children, share and share alike, and paid to each of them for the use of their respective children, and by each of them so applied."

At the execution of the will, and at the testator's death, there were two of the children who had no issue, and it was contended the fund should be divided amongst those only who had children.

Referring to this clause, the Court said : " From the terms of this bequest, it is, we think, most apparent that equality to each of his children, was the governing motive of the testator, and such ought to be the construction given to his will, if it can be made compatible with the import of the language he has used.    Where the testator stands in the relation of parent, a bequest to children generally will be presumed, in legal construction, to embrace all who answered that description at the period of his death.    A Court of Equity is always solicitous to adopt and enforce such a construction, because it is conformable to the dictates of nature, and in accordance with the best affections of the heart."    Quoting, they proceed—" In 2 *Wms. on Ex'rs.*, 797, speaking of bequests to children in a class, the author says, " generally speaking, every person who at the time of the testator's death falls within the described class of children, will be entitled : But where it appears from express declaration, or clear inference upon the will, that the testator intended to confine his bequest to those only who answered the description at the date of the instrument, such intention must be carried into effect."

Replying to the argument that the grand-children were the special objects of the testator's bounty, the Court said : " Although a provision for his grand-children might have been an object about which he was solicitous, it is fully apparent that he was equally anxious that all his children should be equally benefitted by his bounty ; and that no distinction or

disparity should exist between them, as the objects of his munificence."

Although the general rule, that those who answer the description at the testator's death, is acknowledged in the above case, it as clearly recognizes with approbation, the principle that the rule depends upon the intention of the testator, manifested expressly, or by clear inference.

The same case emphatically declares, that where there is a general and particular intent apparent upon the face of the will, the general intent, although just expressed, shall control and overrule the particular. 11 *G. & J.*, 206.

Applying this rule to the case before them, the Court say, "if, then, equality of bounty to all his children, was his great leading and cardinal motive; in the language of the books, if such was his general intent, and he has used language sufficiently strong to carry that intent into effect, upon principle it appears to be settled, that such general intent is not to be frustrated by any inconsistent particular intent, but must be supported, and ultimately prevail."

The residuary fund, which constituted a large portion of the estate, in pursuance of the rules above cited, was divided equally among the children without issue and those who had issue; ignoring the words " and paid to each of them for the use of their respective children, and by each of them so applied." A more signal instance of the controlling influence of general intention, over the literal meaning of the terms used, could hardly be adduced. In the present case, an anxious desire is manifested throughout the will to provide for the collateral relations of the testator to the third and fourth degree.

He not only provides for nephews and nieces, but for grand nephews and cousins, and it is fair to presume the same affection and solicitude extended to the children of each of his nephews and nieces and their issue.

In the third, fifth, sixth and seventh items of the will, devises are made " *in presenti* " and " *in futuro* " to the chil-

dren of nephews and nieces. In the ninth and tenth items, to grand nieces and grand nephews, sometimes individually and in others, as a class, with words of limitation, to their heirs, annexed. It is obvious from the frequent and almost uniform use of the word "children" in the above items, with words of inheritance and descent, immediately following, the testator supposed he was making adequate provision for all the issue, or descendants of nephews and nieces, and not using the term in a sense, which might enrich some and impoverish others.

He had no idea of fluctuating classes, or distinguishing between children, living at the date of the will, and children who survived him; all were equally dear to him, and equally objects of his bounty. The fourth item of the will cited in the preceding page of this opinion, and under which the parties more particularly claim, is peculiar and different in its language from the others, in several respects.

The legal estate in the property devised, is vested in the trustee in fee, charged with an executory trust during the natural life of Henry Wilmer; the trustee, to receive and pay the rents, issues, etc., for the support of said Henry and his family.

The word family has been judicially construed as meaning, "heir apparent," "relations," or "next of kin," according to the subject-matter of the devise. 2 *Jarman*, 27, 28, 30, 31, (*in mar.*,) 3 *Am. Ed.*; 2 *Wms. Ex'rs*, 819, (*in mar.*,) 2 *Am. Ed.*; 2 *Redfield on Wills*, 72, *sec.* 6. It is true that in *Tolson vs. Tolson*, 10 *G. & J.*, 174, it was said the word "family," as used in that will, did not designate any individual persons with sufficient certainty.

Although standing alone, the word "family" may be insufficient to point out with certainty the persons to be benefitted by the devise, yet used in the connection in which it stands in the clause under consideration, it indicates the testator designed his bounty should flow in the broadest stream among the descendants of his nephew Henry. Assuming the

Taylor *vs.* Watson, *et al.*

trust to have been created for the benefit of Henry and his family, it would be an unnatural construction to limit the meaning of the words, " children and their heirs equally," to children surviving the testator, as thereby three-fourths or four-fifths of the family might be excluded. In further support of this view, we think it is clear from the provision securing dower to the wife of Henry Wilmer, in the lands devised to her husband, the testator did not use the words employed in their technical sense. The provision " that she shall have her dower in said lands," etc., " as if the same had not been left in trust," shows that the devisor supposed he had conveyed to his nephew Henry, an estate, in which his wife would be entitled to dower, but for the interposition of a trust; in other words, an estate in fee, and not for life; in which event, the children would take by descent, and not by purchase, and the issue of a deceased child, would take in place of its parent.

"If words of art" (said Lord ALVANLEY, in *Thellusson vs. Woodford,*) " are used, they are construed according to the technical sense, unless upon the whole will, it is plain, that the testator did not so intend." * * * " But where the intention of the testator is plain, it will be allowed to control the legal operation of words however technical." 2 *Wms. Ex'rs,* 789, (*in mar.*); *Vauchamp vs. Bell, Madd. & Geld,* 343; 6 *Cruise's Dig.,* 148, (3d *Ed.*); *Bond's Appeal,* 31 *Conn.,* 185.

We have seen from the cases cited, it is not an invariable rule, that the words of a devise, shall be construed as speaking at the death of the testator, but that the rule is subject to the paramount intention apparent upon the face of the will.

In a recent case in Connecticut, it was held that a bequest to the testator's " children and their heirs respectively, to be divided in equal shares between them,"'should be so construed as to embrace all the testator's children, living at the time of his decease, and the representatives of such, as had deceased, leaving children. In that case, the testator, at the time of his decease, had four children living, and four others had deceased

leaving children.   *Bond's Appeal*, 31 *Conn.*, 183 ; 2 *Redfield on Wills*, 33.

So, in Pennsylvania, in a bequest to " the children or legal heirs of my brother A," a grandchild of A, whose parents died before the testator, was held entitled to share with the children living at the testator's death.   *Sorver vs. Berndt*, 10 *Penn. St.*, 213.

In *Redfield on Wills*, the learned author, commenting on a case in which a surviving brother and sister were held to take, to the exclusion of a child of a deceased sister, says : "A more natural construction, and one more likely to meet the desire of the testator, would have been to allow the representative of the deceased sister, to take concurrently with the surviving brother and sister, as tenants in common, and quite as consistent with the terms of the bequest."   2 *Redfield on Wills*, 33, *note* 67.

There is nothing in this construction which necessarily conflicts with the rule, that admits after-born children (in cases of devises to fluctuating classes,) to come in and participate in the bounty of the testator ; it only enlarges the rule, in deference to the manifest intention of the testator, who is presumed to design to deal equally with his devisees *in consimili casu.*

The ratification and confirmation of the will, (except as far as altered or changed,) by the codicil, does not, in our opinion, affect its construction in the present instance.

The testator, confiding in its ample and liberal dispositions, might well have supposed he had already provided for all contingencies which had occurred, or might occur, in the original instrument, and therefore left it otherwise unchanged.

Having found in the will itself, terms sufficiently comprehensive, to entitle the appellant to a share in the lands devised in trust for Henry Wilmer, and his children, it is unnecessary to inquire whether the provisions of section 304, Article 93 of the Code are applicable.

Upon a survey of the circumstances surrounding the testator, and mature consideration of the whole will, we conclude that the testator, standing "*in loco parentis*" towards his several nephews and nieces and their children, made the dispositions contained in his will, in the nature of a family settlement, designing to provide for the *children then living* of his nephews and nieces, as well as those who might thereafter be born, before the death of the testator, and their heirs ; and that the issue of a *child* living at the date of the will, but dying before the testator, should take equally with the children surviving at the testator's death ; and, consequently, that Glendora Taylor is entitled to the share her mother would have had, if living at the decease of Pere Wilmer.

We concur with the Court below in thinking that the trust terminated with the life of Henry Wilmer, the *cestui que* trust for life ; the duties of the trustee then ceasing, the legal estate in fee vested in the children and grand-child of said Henry, (subject to the dower of his widow,) among whom partition will be decreed according to the provisions of the Code.

The decree below must be reversed, and the cause remanded to the Circuit Court for Queen Anne's county for further proceedings, in conformity with the preceding views.

*Decree reversed, and
cause remanded.*

(Decided 3d May, 1872.)