WILLIAM H. STAHL *vs.* MARIE EMERY ET AL.

ALBERT STAHL *vs.* MARIE EMERY ET AL.

*Wills—Gift to Class—Children—Time of Ascertainment—*
*Lapse of Legacy.*

A gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions, the share of each being dependent on the ultimate number of persons.                    p. 126

The words "our children," as descriptive of those among whom property is to be distributed after the widow's death or marriage, would, unexplained and given their customary and technical meaning, refer to children living at testator's death or at the termination of the widow's life estate.    pp. 127, 128

The situation of the testator, and the relations existing between him and the objects of his bounty, must be considered in connection with the language of the will, in order to enlighten the court as to the real motives and intent by which he was controlled.                    p. 128

Evidence of the situation of the testator, and of the relations existing between him and the objects of his bounty, while admissible to place the court in the situation of testator, cannot be allowed for the purpose of affecting the construction of a will where the language is clear and unambiguous.          p. 128

A will is to be construed to speak and take effect as if executed immediately before the death of the testator.       p. 128

The word "children," *simpliciter,* is a technical word, primarily one of purchase, not of limitation, and imports only immediate descendants.                    p. 128

Where a gift is to a class, the objects composing the class take as joint tenants, and not as tenants in common, and hence it is subject to the incident of survivorship.          p. 129

The time at which the members of a class are to share in a gift is to be ascertained, where it is not fixed by the will itself, and where the gift is immediate, is the death of testator, and where it is postponed pending the determination of a preceding estate, it is fixed at the distribution of the estate.        p. 132

Where testator devised his property to be equally divided, on the expiration of a life estate to his widow, "among our children, share and share alike," *held* that the gift was to the children as a class, and those children took thereunder who survived testator and his widow, to the exclusion of grandchildren by daughters who died before testator.        p. 132

Code, art. 93, sec. 326, to prevent the lapsing of legacies, does not apply in the case of a gift to a class, some of which class die before testator, leaving surviving other members of the class, entitled to take the gift to the class.        p. 133

*Decided January 15th, 1925.*

Appeals from the Circuit Court No. 2 of Baltimore City (DAWKINS, J.).

Bill by Marie Emery and others against William H. Stahl and Albert Stahl, and their respective wives. From a decree for plaintiffs, the two defendants named separately appeal. Reversed.

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*Joseph R. Gunther,* for the appellants.

*Edwin W. Hermann,* with whom were *Skinner, Hermann & Skinner* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

William Stahl on March 26th, 1893, executed a will containing this clause: "I give. devise and bequeath all my property, real, personal and mixed, I may die possessed of, wheresoever and wherever the same may be, to my beloved

wife, Mathilda Stahl, the same to be held by her during her natural life or as long as she remains my widow, so that she may use and enjoy the income and profits thereof so long as she may live, and from and immediately after her death or marriage, the said estate is to be equally divided among our children, share and share alike." At that time he had four children living, Fannie, Mathilda, William H., and Albert. Of these, Fannie (married to Andrew Carle) died October 20th, 1904, and left to survive her an only child, Marie (now married to Lewis J. Emery); Mathilda (married to Henry J. Carle) died August 10th, 1902, and left to survive her an only child, Mathilda (now married to John Miller); while William H. and Albert Stahl survive. The testator died August 20th, 1908, and his wife, the life tenant, died January 23rd, 1924.

Marie Emery and Mathilda Miller and their respective husbands, on the theory that they have an interest therein, filed in Circuit Court No. 2 of Baltimore City their bill of complaint for the sale of certain real property included in the estate in lieu of partition, and in that bill they also ask that a deed, under which the title to two lots of ground which were part of the estate became vested in William H. and Albert Stahl, be set aside. The two Stahls, William H. and Albert, in their answer to that bill denied that the complainants had any interest in the estate, and asked that the bill be dismissed on that ground, and that question was submitted to the court on testimony supplemented by an agreed statement of fact.

The lower court determined by its decree that the estate is now vested in the two surviving children of William Stahl, William H. and Albert, and in his two grandchildren, Marie Emery and Mathilda Miller, in equal shares, and from that decree the appeal was taken.

The controlling question presented by the appeal is whether Marie Emery and Mathilda Miller have any interest in the estate which William Stahl, their grandfather, disposed of by that clause of his will, to which we have referred.

The contention of the appellees is: "(1) that the language in question does not constitute a devise to a class, and (2) if it be a devise to a class the interests of the two daughters are saved to the appellees by virtue of section 326 of article 93 of Bagby's Code. The appellants on the other hand contend that the devise is to a class and that the rule of survivorship applies, and that section 326 of article 93 C. P. G. L. of Md. has no application to the facts of this case.

In 1 *Jarman on Wills* (6th Ed.), p. *232, it is said: "A number of persons are popularly said to form a class when they can be designated by some general name, as 'children,' 'grandchildren,' 'nephews'; but in legal language the question whether a gift is one to a class depends not upon these considerations, but upon the mode of gift itself, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." That definition of the word was approved in *Dulany* v. *Middleton,* 72 Md. 77, and also in *Re Henderson's Estate,* 161 Cal. 353, and cited in *Clark* v. *Morehous,* 74 N. J. Eq. 658. There is in *Re King,* 200 N. Y. 189, a very careful and clear analysis of it, in which the court says: "The exact converse of this definition is well stated by Vice-Chancellor Kindersley in the English case of *Cruse v. Howell* (4 Drewry, 217): 'If there is a bequest to certain persons *nominatim,* or so described as to be fixed at the time of the gift, so that there can be no fluctuation, then, if one of them dies in the lifetime of the testator, his share lapses.' These two antithetical definitions clearly mark the line which must be followed in construing the will now before the court. If the gift were to the nephews and nieces of the deceased husband of the testatrix generally, without designation, restriction, or limitation, it would be a gift to a class, because the ultimate number of the beneficiaries would have remained uncertain and incapable of ascertainment until the death of the testatrix. In

that event the survivors would, of course, represent the class and take the whole gift. But that, as we have seen, is not this case. The gift of the testatrix was not 'to a body of persons uncertain in number at the time of the gift, to be ascertained at some future time,' but to certain persons 'so described as to be fixed at the time of the gift.' The bequest was to the nephews and nieces of the deceased husband of the testatrix who were living at the time of his death."

In 34 *L. R. A. N. S.* 945, in a note to the case last cited, the editor, after referring to the cases "sufficiently similar to render their presentation useful" in connection with that principle, says: "Such decisions, however, lend themselves to the generalization that where the element of description referring to existence at a certain time is to be taken merely as signifying an intention that persons corresponding to the general description, but who subsequently come into existence, should not participate in the testamentary provision, the gift is one to a class; but that where such element may fairly be taken in its ordinary descriptive signification, the gift is not to a class, but to the individuals answering the description at the time referred to."

Accepting that definition as sound, the question is reduced to this, did the testator by the expression "our children" mean to describe his children living when the will was executed, or did he mean that term to embrace only such persons as would answer that description at some future time. If he intended by it to refer to his children living at the time the will was executed, then the devise was not to a class, but to individuals, because their number was known and certain, but if he intended it to apply to such of his children as might be alive at some future time, the devise was to a class, because in that event the number of persons who would take would remain uncertain until the time arrived at which the distribution was to be made.

There is nothing to be found in the four corners of the will which in any way defines, explains, interprets or qualifies the words "our children." Unexplained and given their

customary and technical meaning, they would refer to children living at the date of the death of the testator, or the termination of the life estate. _Alexander on Wills,_ par. 880. And the appellant contends that since the language of the will is simple, plain and unambiguous, the intention of the testator must be ascertained from it alone, but the question is not quite so simple as that. For, as stated in _Henderson v. Henderson,_ 64 Md. 188, the situation of the testator, and the relations existing between him and the objects of his bounty, "must therefore be considered in connection with the language of the document itself in order that we may be fully enlightened in regard to the real motives and intent" by which he was controlled in the execution of the will. Because the circumstances surrounding its execution may have been such as to make it obvious that the words used, while plain enough, did not express the real intent of the testator (_Jarman on Wills_ (6th Ed.), p. 394), but such evidence, while admissible to place the court in the situation of the testator, could not be "allowed for the purpose of affecting the construction of a will where the language is clear and unambiguous." _Alexander on Wills,_ par. 113.

In construing the words "our children" as used in this will we are not altogether governed by settled, definite, fixed and invariable rules, for, as said in the King case, _supra,_ "no will has a twin brother," and many of the cases interpreting similar phraseology turn upon circumstances peculiar to themselves, and naturally there is some apparent conflict and much real confusion in the decisions, as to the construction to be placed upon those or similar words. But while that is so, there are certain rules which, while subject to exception and subject to the cardinal and controlling principle that the intention of the testator must be given effect, are generally accepted, which are not only of assistance, but must be considered in interpreting such an expression. One is that the will "should be construed to speak and take effect as if executed immediately before the death of the testator." 28 R. C. L. 234. Another is that the word "children" _simpliciter_

"is a technical word, primarily one of purchase, not of limitation, and imports only immediate descendants." A third is that where the gift is to a class, the objects composing the class take as joint tenants and not as tenants in common, and hence it is subject to the incident of survivorship.

The application of these rules has been under discussion in this Court in a number of cases involving facts not wholly dissimilar to those found in this case, to several of which we will refer.

In *Merowitz v. Whitby,* 138 Md. 222, property was given in trust for the children of a niece of the testatrix to be equally divided when the youngest child reached the age of eighteen years, "share and share alike between said children or those surviving." One of the children died after the testatrix, but before distribution. In holding that a child of such deceased child was not entitled to share in the distribution, this Court said: "It is true that there are instances to be found in the books where the term 'children' has been so broadened as to include grandchildren, but these will be found to be limited to cases where the language of the deed or will showed a clear intent on the part of the creator of the trust that such course was in accord with the intention."

In *Burden v. Burden,* 130 Md. 551, the gift was to the "child or children" of Evelyn Byrd Burden surviving her, and it was held that children of a deceased child of Evelyn Byrd Burden, who had predeceased her, were not within that description and did not take.

In *Dawson v. Akers,* 127 Md. 585, the gift was in trust for the "use and benefit of all the children" of Harry B. Akers "until the time arrives when there shall be no child of" the said Akers "living and under twenty-one years of age." Akers had two children, both of whom were living when the youngest became twenty-one, and they applied to have the estate distributed to them discharged of the trust. In dealing with that question this Court said: "The gift is to Leonora A. Akers in trust, 'for the use and benefit of all the children

of my brother, Harry B. Akers.' The duration of the trust as fixed by the testator is the time 'when there shall be no child of my said brother Harry's living and under twenty-one years of age,' at which time he declared the trust should cease and the distribution of the property made in accordance with the terms of the will. It is therefore a gift to a class of persons, and the mere use of the word 'all' preceding the word 'children' does not change the legal effect of the rule applicable to gifts of this character. *In re Dellinger's Estate,* 170 *Pa. State* 104; *Appeal Hunt et al.,* 19 Atlantic Reporter 548."

A similar question was considered in *Shotts v. Poe.* 47 Md. 513, where it was said: "The only other question is whether the term 'children,' used in the declaration of trust, includes children of the son that may be born after the death of the testator. And upon this question there can be no doubt whatever. If there be any question that may be regarded as incontrovertibly settled, in the construction of wills or testamentary papers, it is that an immediate gift to children *simpliciter,* without additional description, means a gift to the children in existence at the death of the testator; provided there be children then in existence to take."

In *Demill v. Reid,* 71 Md. 175, it is said: "The word 'children' does not ordinarily denote 'grandchildren,' and is not to be so construed, unless the will clearly manifests that such was the intention of the testator. It is quite impossible to say in this case that the testator meant that grandchildren as well as children of his son should share in the estate when the contingency which he had prescribed fell out. Nor is there any necessity for putting such a construction on his language, for there are children here to take, and in such a case Sir William Grant said, 'I never knew an instance where there were children to answer the proper description, that grandchildren were permitted to share along with them; although where there is a total want of children, grandchildren have been let in under a liberal construction of the word children.' "

In *Taylor v. Watson,* 35 Md. 519, property was devised in trust for the benefit of Henry Wilmer, and at his death "to his children and their heirs equally; share and share alike." Although the court held that the language used in other parts of the will manifested an intention on the part of the testator to include in the term "children," a grandchild of Henry Wilmer, whose mother, a daughter of the testator, had died between the execution of the will and the death of the testator, it was said: "All the authorities we have consulted establish the proposition that the word 'children' is to be construed as the 'immediate offspring,' and not inclusive of 'grandchildren,' unless where there are no children, or necessary implication requires it. 2 *Jarman on Wills,* 70 *marg.* and authorities in note (1); 2 *Wms. Ex'rs,* 802."

We find nothing in the Maryland cases cited by the appellee which qualifies the statements of this Court in the cases to which we have referred. In *Chase v. Lockerman,* 11 G. & J. 185, the Court was dealing with the distribution of certain income which was to be "divided amongst my children, share and share alike, and paid to each of them for the use of their respective children, and by each of them so applied," and it was held that from the whole will an intent was manifested to treat all of his children equally and in that connection it was said: "Where the testator stands in the relation of parent, a bequest to children generally will be presumed, in legal construction, to embrace all who answered that description at the period of his death. A court of equity is always solicitous to adopt and enforce such a construction, because it is conformable to the dictates of nature, and in accordance with the best affections of the heart." And in *Taylor v. Watson, supra,* the court, in holding that the word children as used in the will under consideration there included a grandchild, expressly stated that it found "in the will itself" evidence that the testator intended it to have such a construction.

These statements of the law applicable to the question before us found in these cases is so generally recognized that

any further citation of authorities seems superfluous, but we will refer to one other case, *Trenton Trust & Safe Deposit Co. v. Sibbits,* 62 N. J. Eq. 131, in which language of similar import to that under consideration here was construed. The bequest in that case was to "the children of any sister Dia-demma Doughty, share and share alike." One child died before the testator, leaving two children to survive him. In construing those words under those circumstances, the Court of Chancery of New Jersey said: "That the bequest to the children of Diademma Doughty was a gift to a class is entirely clear. *Gordon v. Jackson,* 58 N. J. Eq. 166. Nor will the direction that the gift shall go to the children, share and share alike, destroy the class. The gift is to such of the children as are alive at the death of the testator, no other date for ascertaining the members of the class having been fixed by the testator. It is therefore those who survive the testator who are to take, share and share aike."

In determining the time at which the members of a class to share in a gift are to be ascertained, where it is not fixed by the will itself and where the gift is immediate, the time is fixed at the death of the testator (*Demill v. Reid, supra*), and where it is postponed pending the determination of a preceding estate, it is fixed at the distribution of the estate.

Applying these rules to the facts before us we must hold that the devise in this case was to the children of the testator as a class, the members of which were to be ascertained at the time of the death of the life tenant. There is not a word in the will aside from what we have quoted which in any way refers to the children of the testator, and the words used are as clear, unambiguous and plain as language can be. The testator devised his property to be equally divided at the termination of the life estate among "our children" share and share alike. Those words had a definite technical meaning which the testator must be presumed to have known, when he executed the will. To depart from that meaning, and supply by conjecture based upon humanitarian considerations another meaning, so as to extend the benefits of the

will to persons who might justly and naturally expect to share in the estate would not be to construe the will but to make another one. There is nothing in the will and nothing extrinsic to the will which can give to the words we have quoted any other than their legal and technical meaning, or indicate any intention on the part of the testator that they should have any other meaning, unless we can infer such an intent from the mere fact that the testator was on pleasant terms with his children and his grandchildren, and if that were sufficient, the meaning of wills would depend not upon their language but upon the situation of the testator when they were executed, no matter how clear and plain that language might be.

Nor do we think article 93, section 326, C. P. G. L. of Md. applies to the facts of this case. This is not the case of a legacy which has failed or lapsed, because there was no legacy to the appellees at all, since the legacy was to a class and there were in being at the death of the life tenant members of the class who were entitled to take the gift to the class, and what was said in *Young v. Robinson,* 11 G. & J. 341, we regard as conclusive of that question. The Court there, in discussing this section, said:

"It is presumed, that those persons of the described class, who survived the testator, were the only objects of his bounty, so that if an individual answering the description of the bequest, who, if living at the death of the testator, would have been entitled to participate in the bequest, happen to die before him, that event, from the above presumption, will not occasion a lapse of any part of the fund. * * *

It is supposed that this latter act makes the case before the Court, as there are legatees described in the will, who died before the testator. But we apprehend it was not the design of the Legislature to change or alter any of the existing rules in the construction of wills, but simply to provide for such cases of legacies and devises as by the rules of law lapsed, or failed to take effect, by the death of the devisee or legatee in the life time of the testator."

From what we have said it follows that in our opinion the appellees have no interest in the estate of William Stahl, and the bill of complaint in this case should have been dismissed, and in view of that conclusion it becomes unnecessary to discuss the exceptions to the evidence found in the record. The decree appealed from will therefore be reversed, and the bill dismissed.

*Decree reversed with costs, and bill dismissed.*

URNER, J., dissents.