# ACHSAH R. PRESTON *et al vs.* MARY W. L. C. WILLETT, *et al.*

### *Construction of a will—Power of Appointment—Costs.*

The residue of an estate was devised in trust for the benefit of the testator's six children, share and share alike, with directions to the trustees to pay one-sixth of the income to each of the children during life. After the death of the children testator gave the share of the estate of the one dying to such of his or her issue as he or she may by last will appoint, "which appointment," the will provided, "I hereby empower my children to make, whether married or single." "In case of the death of any of my said children intestate, but leaving issue living at his or her death, I give * * the share of my estate of the one so dying to be equally divided among such issue *per stirpes*. In case of the death of any of my said children intestate and without having issue at his or her death, then the share of the one so dying * * to be equally divided among my surviving children and the issue of any deceased child. *Held*, that although the testator did not in express terms make any provision for the devolution of the share of a child who should die testate and without leaving issue, yet, in view of the general power of appointment by

last will given to the children, whether married or single, and the other provisions made by the testator, the share of a child who dies without leaving issue can pass under the will of such child.

When it is adjudged that certain property passes under a will, and it was proper to call upon the Court for a determination of that question, it will be ordered that the costs of the proceeding be paid out of such property.

*Decided April 2nd, 1907.*

Appeal from the Circuit Court of Baltimore City (NILES, J.)

The case was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*Frank Gosnell* and *Alexander Preston*, for the appellant.

*John E. Semmes* and *Charles W. Field* for the appellees.

*Charles McH. Howard* filed a brief for The Safe Deposit and Trust Co. trustee.

BOYD, J., delivered the opinion of the Court.

The Safe Deposit and Trust Company of Baltimore, which was appointed substituted trustee to administer the trusts created by the will of the late James Carroll, instituted this proceeding to obtain a construction of certain provisions of that will. Mr. Carroll had a wife, five daughters and one son when his will was made, in 1876, all of whom survived him, but his widow died the year after he did. Mrs. Preston, who is still living, was the only child of Mr. Carroll, who was married when the will was made, and she then had several children. Prior to the death of Mr. Carroll, which occurred in 1887, his daughter Mary L. married James Holmes Whitely, and after his death Sophia G. married John O. Turnbull and Catharine L. married John C. Willett. His son Harry died intestate and unmarried, in 1888, and his daughter, Sallie W., is still living and unmarried.

None of his children have had issue except Mrs. Preston, who has several children and grandchildren, and Mrs. Wil-

lett, who has one daughter, Mary W. L. C. Willett. Mrs. Turnbull died in 1906, without issue, but leaving a last will and testament by which, after providing for her debts and funeral charges and bequeathing a miniature of her deceased husband, she left to her niece, Mary L. C. Willett, all her estate and property "and all over which I have any power of appointment." That provision in her will presents the question to be determined by us, namely whether she could, by will dispose of her share in the residue of her father's estate—she not having any issue. As that depends upon the will of her father, we will quote such of its provisions as reflect upon the question.

The testator left all of his property to his wife for life, then gave his son certain personal property and a house and lot in Baltimore and gave certain properties to his five daughters, as tenants in common. He left all the rest and residue of his estate, after the death of his wife, to trustees:

"In trust, nevertheless, share and share alike for my children aforesaid, upon the following trusts and conditions, towit:

(1) In trust to pay one equal sixth part of the clear annual income thereof to each of my children during life, and from and after the death of my said children, I give, devise, and bequeath the share of my estate of the one so dying absolutely and discharged from the trust hereby created to such of his or her issue as he or she may by last will appoint and for such estates and with such limitation as may be in said will set forth, which appointment I hereby empower my chfldren to make whether married or single.

(2) And in case of the death of any of my said children intestate, but leaving issue living at his or her death; I give, devise and bequeath the share of my estate of the one so dying to be equally divided, among such issue *per stirpes* and not *per capita*, absolutely and discharged from the trust hereby created.

(3) And in case of the death of any of my said children intestate and without leaving issue living at his or her death, then the share of the one so dying shall be held in trust as afore-

said to be equally divided among my surviving children and the issue of any deceased child or children *per stirpes*, my children's portions thereof to be held upon the same trusts as are herein provided for their original shares.''

We have for convenience of reference inserted numbers before those clauses, although they are not in the original. It is clear that those clauses made provision for at least three classes: 1st, that a child of the testator who had issue could will his or her one-sixth share to any one or more of such issue; 2nd, that the share of a child dying *intestate*, but *leaving issue*, should go to such issue, and 3rd, that if a child died *intestate*, *without leaving issue*, the share of such child should be equally divided among the testator's surviving children and the issue of deceased children, *per stirpes*. It is equally clear that the testator did not *in terms* make any disposition of the share of a child who died *testate and without leaving issue*, unless some such construction be given the will as is contended for by the appellees. It was suggested by the appellants that the expression used in clause (3), *"intestate and without leaving issue"* meant *"intestate"* as to the share of a child received from his or her father, but according to their construction of the will, a child who died *"without leaving issue"* could not make a valid will, *to affect that share*, and hence, if that be so, the word "intestate" in that connection would be meaningless and useless. For if a child who died without leaving issue had no power to will his or her share, why was it necessary to provide for a case in which one died *"intestate and without leaving issue?"* Does it not strongly imply that the testator intended that some of his children might die *testate*, as to his or her share, although not leaving issue? Of course the testator could not control his children's disposition of [their own property, not received from or through him. They might die *testate or intestate* as to that, and whether they left issue or not, he could not direct how it should go. Nor did he attempt, in any way to limit their disposition of property left them absolutely by his will, but the provisions we are quoting and are considering only refer to the shares of the

residue of his estate, which he left in trust for his children during their lives, and provide for contingencies that might happen with reference to those shares.

If the testator intended that in case any of his children died without leaving issue the share of the one so dying must go as provided for in clause (3), whether such child died testate or intestate, he could and doubtless would have said so, but he expressly limited the disposition of a share by that clause to the "one *so dying,*" that is to say, dying "*intestate* and without leaving issue," and not merely to dying "without leaving issue." It would seem therefore, to be quite certain that the testator did not intend a share to pass under that clause (3), unless both of the conditions provided by for him existed, that is to say, that such child die, "intestate and without leaving issue," and the implication is very strong that he intended that a child could die *testate* as to such share, although not leaving issue.

When we look to clause (1), what do we find? He first provided that one equal sixth part of the clear annual income be paid "to *each of my children* during life"—making no distinction between the married and the single—and "from and after the death of my said children, I give, devise and bequeath *the share* of my estate *of the one so dying* * * * to such of his or her issue as he or she may by last will appoint * * *, which appointment I hereby empower *my children* to make *whether married or single.*"

There was no necessity to give special power to a married child to make the appointment, as even at common law a married woman could execute a power, and for many years she could make a will in this State. Nor was there any reason for specially authorizing a *single* child to do so. It is difficult to believe that he intended thereby to limit the appointment to children who left issue, as *he knew* those who remained single would not have issue. If he did so intend, the last part of that clause was wholly unnecessary, for he had already provided for those *leaving issue.* It is more reasonable to suppose that instead of leaving the share of a child, who had

issue, to all of his or her issue, he intended simply to provide that it could go to such of the issue as his child named by will, but upon failure of the child to make a will he provided by clause, (2) where the share should go. Then when he said "which appointment I hereby empower my children to make *whether married or single*" he apparently intended to authorize all of his children, regardless of the question whether they were married or single, to make *an appointment*, which was to be by last will "and for such estates and with such limitation as may be in such will set forth," but did not name the class of persons for whom the appointment should be made. Then in clause (3) he provided for those who died "*intestate and without leaving issue.*" It may be conceded that the expression "*which* appointment" would properly be construed to refer to the designation of the class from which the appointees must be selected, as well as the method of making it, character of estate, etc., if there was nothing to qualify it, or indicate a contrary intention, but when we find it used in connection with language which must enlarge the appointment beyond the restrictive language previously used, if given its plain and ordinary meaning, it ought not to be so limited. We must either *strike out* the words "*whether married or single*," which judging from their position in the will must have been deliberately inserted, or attribute to the testator a degree of ignorance that the record does not justify. Of course he did not for a moment suppose that a child who remained single would have issue, and, as only one of his children was married when he made his will, he must have known that the power to appoint for "such of his or her issue" then only applied to one daughter. Indeed, after a lapse of over thirty years from the date of the will she alone can exercise the power of appointment, as construed by the appellants, as she is the only child who has more than one child or descendant. It is not reasonable to suppose he would have intended such a restrictive power, and having used expressions in clauses (1) and (3) which clearly indicate that he did not, we must give effect to them. If he had intended that

the share of each child who died without leaving issue should *at all events* go back into his estate for the benefit of his surviving children and the issue of deceased children, he could so easily have said so that the absence of such an expressed intention is a strong presumption that it did not exist. Especially is that so when the omission of the two words *"intestate and"* from clause (3) would have accomplished it. But he inserted them and now the appellants ask us to strike them out. at least that is the effect of their contention.

. The construction of the appellants would cause an intestacy, as to each share held by children who die without leaving issue. It not only makes the testator say what shall be done if any of them die intestate, as to their respective shares, and without leaving issue, but that all such *shall die intestate* in respect thereof—although he said he empowered his children whether married or single to make an appointment, and provided for what should be done when any died *"intestate* and without leaving issue"* with such particularity as to necessarily imply that he intended that those who did not leave issue might make wills, affecting their respective shares. We are therefore of the opinion that by a proper construction of the whole will Mrs. Turnbull, or any child similarly situated (not leaving issue), could make a valid will leaving her share to such person or persons as she therein named. Whether or not a child having issue could leave her share to any one other than of her issue is not involved in this case, but we have no doubt that she could leave it to one or more of such issue, where there are more than one.

We do not deem the authorities cited by appellants to be at all in conflict with this conclusion. The case of *Smith* v. *Hardesty*, 88 Md. 387, so much relied on, does not seem to us to in any way control the construction of this will. There the power given the wife of the testator was "to devise the same at her death, *to my children or either of them*, in such manner as she may deem best." The testator had given all of his property to his wife, *during her life*, with power to sell and dispose of it as she might desire, and to exercise all rights

of ownership over it without impeachment of waste, as fully as if it belonged to her in fee simple. Then followed the power to devise it above quoted, and the testator then continued "at the death of my wife, I give, bequeath and devise to my two children, all of my property that may remain undisposed of by my wife at the time of her death, or which she may not dispose of by last will and testament or otherwise," and mentioned his two children by name. The widow of the testator made a will leaving $200 to her sister, to be paid out of the proceeds of crops raised on a farm which had belonged to the testator, and then left the farm subject to a charge of the $200 to a grand daughter. We held that the widow only had a life estate in the property with a power of disposition of the reversion, and that the power to devise was expressly limited to one or both of the testator's two children and although both of them were then dead the widow had no power to make other disposition of the property by her will. In that case we had no question as to whom the will of the testator authorized his wife to appoint. When that is determined there is generally not much difficulty in deciding whether the power has been properly exercised, but in this case we are called upon to determine whether one of the testator's children who had no issue could under the provisions of the will make an appointment—in other words the question here is whether Mrs. Turnbull, having no issue, had the power *to appoint* anyone, while in *Smith* v. *Hardesty* it was whether the widow had the power to appoint those she did appoint. If we had concluded that the testator only intended to give each child power to appoint one or more of his or her issue, of course the will of Mrs. Turnbull would not have been a good execution of the power, but having concluded that such was not his intention, but that he meant that his children who had no issue could make an appointment by will, it must be conceded that if we are right in that conclusion there was a *general power* of appointment given to such of his children, and it was not attempted to be limited, as was done in *Smith* v. *Hardesty* to a particular class.

· Without discussing other authorities, as we have found none which were of assistance in enabling us to reach a conclusion as to what was the intention of the testator, beyond those announcing general principles applicable to wills, we will affirm the decree; but will direct the costs to be paid by the trustee out of the *corpus* of the estate passing under the will of Mrs. Turnbull, inasmuch as it was proper to have the question determined by the Court.

> *Decree affirmed, the costs to be paid by the trustee out of the corpus of the estate, passing under the will of Sophia G. C. Turnbull.*