# Wytheville.

E. E. DANIEL, ET AL. V. JOSEPHINE J. BROWN, ET AL.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

The opinion states the case.

*S. M. Nottingham* and *Shackelford & Robertson,* for the appellants.

*Burnett Miller* and *Burnett Miller, Jr.,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

This case involves the construction of the fourth clause of the will of Joseph S. Jackson, dated August 28, 1895, wherein power of disposition of certain property was given to his wife, Jane C. Jackson, and the third and fourth clauses of the will of Jane C. Jackson, wherein she attempted to execute this power.

The will of Joseph S. Jackson disposed of his property in three paragraphs, as follows:

"Second: After the payment of all my just debts, I give and bequeath all my personal estate of every kind and description to my beloved wife, Jane C. Jackson, absolutely.

"Third: I give and devise to my brother, Philip M. Jackson, the small lot or piece of land on the east side of the Marquis' road, leading to Unionsville, said land adjoins the

lands of said Philip M. Jackson and contains about one and one-half acres.

"Fourth: All the rest and residue of my real estate, I give and devise to my said wife, Jane C. Jackson, for life, with power to her to give, by last will, said real estate, to such of my nephews and nieces, and in such proportions as she may choose."

Jane C. Jackson, by will dated February 23, 1917, attempted to execute the power given her under the fourth clause of the will of Joseph S. Jackson in the following manner:

"Third: All the real estate of which my late husband, Joseph S. Jackson, died seized and possessed, and which by last will and testament he gave and devised to me for life with power to me to give by my last will the said real estate to such of his nieces and nephews and in such proportions as I may choose, I give, devise and bequeath to Clarinda J. Daniel, William R. Brown and Charles J. Brown, in equal proportions absolutely and in fee simple; the said Clarinda J. Daniel, William R. Brown and Charles J. Brown being the children of Jane Brown, who was the sister of my said husband, Joseph S. Jackson:

"Fourth: In the event that either the said Clarinda J. Daniel, William R. Brown or Charles J. Brown should die before my death, leaving lawful issue of his or her body them surviving, I give and devise to said issue the share that the parent would have taken hereunder if living."

Clarinda J. Daniel, William R. Brown and Charles J. Brown died intestate prior to the death of Jane C. Jackson. Josephine J. Brown was the only child of William R. Brown. Neither Clarinda J. Daniel nor Charles J. Brown left issue.

The heirs at law of Joseph S. Jackson were a brother, Philip Jackson, a sister, Mildred A. Daniel, and the children of Jane C. Brown, a deceased sister. Philip Jackson and Mildred A. Daniel predeceased Jane C. Jackson. This controversy

is between the nieces and nephews of Joseph S. Jackson and the grandniece, Josephine J. Brown.

The learned judge of the trial court decreed that Josephine J. Brown took one-third of the land as issue of her father, William R. Brown, one of the appointees of Jane C. Jackson, aided by sections 5226 and 5238 of the Code; that the devises to Clarinda J. Daniel and Charles J. Brown failed by reason of the death of the appointees in the lifetime of Jane C. Jackson, and that as to this two-thirds interest Joseph S. Jackson died intestate. From this decree an appeal was granted.

It is admitted that the fourth clause of the will of Jane C. Jackson is invalid because she was limited in her appointment to the nieces and nephews of her husband, and this clause attempts to leave the property to the issue of the nieces and nephews named by her in the third paragraph, in the event that any of them should predecease her.

The appellee contends, however, and the trial court so held, that although the donee of the power was restricted in her selection to the nieces and nephews of her husband, yet the statute enabled her to do indirectly what she could not do directly, i. e., select from the class deceased members to be the beneficiaries, and by the provisions of sections 5226 and 5238 the issue of such deceased parties would be entitled to the property.

Section 5226, among other things, provides that an appointment by will, or by a writing in the nature of a will, in the exercise of a power, is a will. Therefore Jane C. Jackson, in the exercise of power given her by her husband to dispose of property by will, must comply with the formal requisites of the Virginia statute in executing a will before the property can be transferred to a third party.

Section 5238 provides that if a devisee or legatee dies before the testator, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed as the devisee or legatee would have done if they had survived the testator, "un-

less a different disposition thereof be made, or required, by the will."

If the property disposed of, or attempted to be disposed of, by the third clause of the will of Jane C. Jackson was her own and she had not made the provision set forth in the fourth clause, section 5238 would have prevented the lapse of that devise in so far as the parties named left issue. Without the statute, the fourth clause of her will would have accomplished the same result. But the property here did not belong to Jane C. Jackson; she was given a specified power to transfer this property in a specific manner, *i. e.,* by will, to a certain class, *i. e.,* the nieces and nephews of her husband. The two wills must be construed together. The sole authority that Jane C. Jackson had to dispose of this property was derived from the third clause of her husband's will, wherein she was expressly authorized to leave it to "such of my nieces and nephews * * * as she may choose."

A stream can rise no higher than its source, and the source of the authority here denies to Jane C. Jackson the power to leave this property to anyone except the nieces and nephews of her husband. Clearly, Joseph S. Jackson provided a different disposition than to leave his property to the issue of his nieces and nephews; by the very requirements of his will grandnieces and grandnephews were eliminated. If the power had been general in the donee to select the objects of the bounty and the donee of the power had exercised her discretion and the devisees named by her had died prior to her death, then section 5238 would have prevented the lapse of such devises in favor of the issue. This was the holding in the case of *Thompson* v. *Pew,* 214 Mass. 520, 102 N. E. 122.

This section does not enlarge the power of appointment; the limitations of such power are fixed by the instrument creating it. Hence the trial court was in error in holding that Josephine J. Brown, a grandniece, was entitled to one-third of the real estate, as issue of her father.

There being no valid exercise of the power, the court is confronted with two possible courses of action. One is to hold that there was no valid devise of this land after the life estate, and in the absence of a residuary clause it would pass under the statute of descent to the heirs at law, in which event the property would have to be divided *per stirpes,* as there were a brother, sister and the children of a deceased sister living at the time of the testator's death. Such is not the testamentary disposition of his property which the testator evidently had in mind.

The other course is to hold that the will disposes of all the property owned by the testator at the time of his death. When a party executes a will the presumption is reasonable and natural that such party intends to dispose of his entire estate.

The testator in the second paragraph of his will made an absolute gift of all his personal estate to his wife; in the third paragraph he devised to his brother, Philip, certain real estate in fee, describing it minutely; in the fourth paragraph he gave in express terms the real estate in question to his wife for life, with power by will to select from a certain class of his relations the particular objects of his bounty. No provision was made in case there was a failure to exercise the power. The court is unable to say which of the nephews and nieces the donee of the power would have selected, and if the devise of the remainder should fail it must fail for this reason. For aid in the solution of this problem we turn to the authorities.

In *Morris* v. *Owen* (1801), 2 Call (6 Va.) 520, personal property was given the wife for life, with power to divide it at her discretion among the testator's children. The wife gave some of the property to a grandchild and died without disposing of the balance. It was held that the gift to the grandchild was void because the grandchild was not in the class mentioned in the testator's will, and the property undisposed of by the donee was distributed under the statute of descent and distribution.

A similar will was before this court in 1820, in *Knight* v. *Yarbrough,* Gilmer (21 Va.) 27, where the testator gave his wife certain lands and other property, in the following language:

"* * * to live upon, pay my debts, and dispose of among my children and grandchildren, as she pleases, and should she find it necessary to sell, all or either of the lands, to convey and make titles thereto, to any person or persons whatsoever, which' title so made shall be valid to all intents," etc.

The wife, under this provision, undertook to give certain property to a son-in-law; the court held the appointment void, and further held that the will of the donor created a trust in the wife for the children and grandchildren of the testator, and hence there was no intestacy growing out of the void appointment.

Since the above case it has been uniformly held in Virginia that where the language of the will confers a non-exclusive power of disposal among a certain class, the members of that class take a vested remainder, or, as it is sometimes put, if the gift is in express terms to the class, with power in another to determine the proportion or share that each member of the class shall take, then there is a vested remainder in all members of the class. *Hudson* v. *Hudson,* 6 Munf. (20 Va.) 352; *Carrington* v. *Belt,* 6 Munf. (20 Va.) 374; *Thrasher* v. *Ballard,* 35 W. Va. 524, 14 S. E. 232; Minor on Real Property, Vol. 2, section 1330. Such was the holding in the case of *Lantz* v. *Massie,* 99 Va. 709, 40 S. E. 50, where the power was expressed in the following language:

"I will and bequeath to my beloved wife, Elizabeth Virginia Massie, all of my estate of every description, real, personal and mixed, to have and to hold during her natural life, and then *to be divided among my children* by will or otherwise, as she may deem best and right." (Italics supplied.)

In *Hood* v. *Haden,* 82 Va. 588, the language used was as follows:

"I give to my wife, Eloise C. Haden, all my property of every kind, in fee simple, to be held by her without division during her life, only using or dividing the annual income from crops or interest received at any time before her death. At her death *to leave to our children such sums* or portions as the circumstances then existing may in her estimation think it best to do." (Italics supplied.)

It was held that the wife took a life estate; that she could only dispose of the *corpus* of the property by will; that any appointments to take effect in her lifetime were void, and that her power of appointment was limited to specified objects.

In the above class of cases, if the donee refuses or neglects to execute the power, the courts have held that the power is coupled with a trust, or is a power which implies a trust, for the benefit of other parties. Equity will not allow a trust to fail for want of a trustee, or be defeated by the refusal or neglect of the trustee to execute the power. Of course, if it be a mere naked power, purely discretionary with the donee, equity will not compel or control his discretion or exercise it in his place. These principles are well established. The trouble arises in determining when a power is coupled with a trust or when it is purely discretionary with the trustee.

Lord Elden said in *Brown* v. *Higgs,* 8 Ves. 574, that if the power be one which it is the duty of the party to execute, made his duty by the terms of the will, and his interest is extensive enough to enable him to discharge it, he is the trustee for the exercise of the power and does not have discretion whether he will exercise it or not, and if he fails the courts will not disappoint the interests of those for whose benefit he is called upon to exercise it. Lord Hardwicke, in *Godolphin* v. *Godolphin,* 1 Ves. (Sr.) 23, said that such powers ought to be called trusts rather than powers. When the form of the gift is such that it can be construed as a trust the power becomes imperative and must be executed.

A case directly in point is *Milhollen* v. *Rice,* 13 W. Va. 510,

where the testator devised lands to his wife for life, and at her death one moiety to his heirs and the other moiety to his wife's heirs, as she might appoint. His wife died without exercising the power of selection among her own heirs. The question arose as to the ownership of the one-half of the lands, or proceeds thereof, left at the disposal of the wife to whom she thought proper among her heirs. It was held that the wife was given a power in the nature of a trust and the proceeds passed under the will to her heirs as the object of the testator's bounty, even though she never executed the power conferred on her. Judge Green said, at page 544:

"All the authorities agree that no power can ever be construed to be a power in the nature of a trust, unless there be a certain subject, on which the power is to act, and a certain object, in whose favor the power is to be exercised. The only point of controversy is whether, when there is this certain subject and certain object there be anything else necessary, to convert a mere power into a power in the nature of a trust, and if so, what else is necessary? There is obviously here a certain subject, that is, one moiety of the proceeds of the sale of all the testator's lands, and if the construction I have given this will be correct, then the object is equally certain, that is, the heirs of the testator's wife. All the authorities agree that the fact that the devisee, on whom the power is conferred, has a right to select, as objects of the testator's bounty, one or more, or give to all, of a certain fixed and determinate class, does not render the object uncertain, so as to prevent the court's holding the power to be a power in the nature of a trust. If the court so holds, it will distribute the testator's bounty equally among all persons belonging to the class designated in the will, wherever the person, who by the will was intrusted with such a power, has failed to execute the power, and the power conferred on such person an arbitrary right of selecting among such class at his pleasure."

See *Tomlinson* v. *Nickell*, 24 W. Va. 148; *Fontaine's Adm'r*

v. *Thompson's Adm'r*, 80 Va. 229, 56 Am. Rep. 588; *Loosing* v. *Loosing,* 85 Neb. 66, 122 N. W. 707, 25 L. R. A. (N. S.) 920; *Mitchell* v. *Johnson, etc.,* 6 Leigh (33 Va.) 461; *Wetmore* v. *Henry,* 259 Ill. 80, 102 N. E. 189, Ann. Cas. 1914C, 247, Third Pomeroy, section 1002; Harrison on Wills, Vol. 1, section 290; Minor on Real Property, Vol. 2, section 1330; 21 R. C. L. 784; 31 Cyc. 1147.

Perry, in his admirable work on Trusts and Trustees (7th ed.), Vol. 1, section 250, quoting from Lord Cottenham, in *Burrough* v. *Philcox,* 5 My. & Cr. 72, states the general rule thus:

"When there appears a general intention in favor of a class, and a particular intention in favor of individuals of a class to be selected by another person, and the particular intention fails from that selection not being made, the court will carry into effect the general intention in favor of the class. When such an intention appears, the case arises, as stated by Lord Eldon in *Brown* v. *Higgs,* of the power being so given as to make it the duty of the donee to execute it; and, in such case, the court will not permit the objects of the power to suffer by the negligence or conduct of the donee, but fastens upon the property a trust for their benefit."

Jarman on Wills, 549, states that under such circumstances the gift to the class is implied, and that the testator could not have intended the objects of the power to be disappointed of his bounty by the failure of the donee to exercise such power in their favor.

Applying the general principle to the facts in the instant case, the court will not permit the devise of the remainder to fail because of its inability to say which members of the class the donee of the power would have selected. The will gives it no guide by which it can distinguish or prefer one member of the class over another. Under such circumstances, equity will decree an equal distribution of the property among all of the nephews and nieces.

This case presents another point which has given the court some difficulty; that is, when does the gift take effect, at the death of the testator or at the death of the donee of the power? Between the death of the testator, Joseph S. Jackson, and the death of the donee, Jane C. Jackson, several of the nieces and nephews died, one leaving issue. Whether or not any nephews or nieces were born during that time does not appear. The donee could execute this power only by will. She was limited in her selection to the members of a certain class who were to take only at her death. If all the objects of the power had died in the lifetime of the donee there could have been no valid appointment by the donee. Inasmuch, therefore, as the donee was confined in her appointment by the will to the nieces and nephews living at the time the appointment should take effect, the court is likewise so confined. Perry on Trusts and Trustees, Vol. 1, section 258, states "that when it appears that the donee is to have his whole life to make the selection or distribution, or if the donee is to have the use of the fund for his life, then the court will distribute it to the parties entitled living at the death of the donee," and cites a great number of English cases supporting the text. To the same effect, see Minor on Real Property, section 1330, and Jarman on Wills, 551.

It is admitted that the donee could not select grandnieces and grandnephews under the power given her. It would be inconsistent to hold that they could take in default of appointment when no appointment could be made to them direct. Suppose that the property had been given to Jane C. Jackson for life and at her death "with power in B to give to such of my nieces and nephews and in such proportions as B may choose." Is there any question of the fact that in such a case B, if living at the death of Jane C. Jackson, would have been confined in his selection to the nieces and nephews living at that time? Does it make any difference that the power is given the owner of the life estate? We think not. It follows that the court in enforcing the trust will be confined to the nieces and nephews

living at the death of Jane C. Jackson. The record discloses
that the property will have to be sold for division among the
parties entitled thereto, and that a final order cannot be en-
tered in this court.

For the reasons stated, the decree herein complained of is
reversed and the case remanded for further proceedings not in
conflict with the views herein expressed.

*Reversed.*