## MacBRYDE v. BURNETT et al.

### Civ. No. 1137.

District Court, D. Maryland.

June 9, 1942.

452

J. Morfit Mullen and R. Contee Rose, both of Baltimore, Md., for plaintiff.

Edwin F. A. Morgan, Frederick W. Brune, and Semmes, Bowen & Semmes, all of Baltimore, Md., for estate of Robert B. Parker.

CHESNUT, District Judge.

The remaining question in this case is the proper division of the fund in court among three several claimants. Questions of jurisdiction and procedure have been heretofore considered and ruled upon (D. C., 41 F.Supp. 661) and the amount of the fund has been determined after hearing on the merits of the main controversy. D.C., 44 F.Supp. 833.

The fund was originally created by the will of Mary Donaldson probated in the Orphans' Court of Baltimore City on May 27, 1920. By the second paragraph of the will the testatrix bequeathed to her niece Sara J. Parker, the "sum of $10,000 for and during her natural life and after her death I bequeath the said $10,000 to her brothers and sister of the whole blood in such proportions as she may designate by her last will and testament, but should she die intestate the said sum of money shall be divided among them equally."

By reason of a fortunate investment of this legacy the amount has increased and

as heretofore determined now is of a value of about $34,000.

The power given to Sara J. Parker, the life tenant, was executed by her in her last will and testament dated March 23, 1927, and probated in the Orphans' Court of Baltimore City November 15, 1940. The provision of the will in execution of the power reads as follows: "The fund of $10,000 under the will of my aunt, Mary Donaldson (which said will is now of record among the records of the Orphans' Court of Baltimore City), which I was to enjoy for life with the right of disposition to my brothers and sister at my death, I give and bequeath in equal parts to my brothers, LeRoy Parker and Robert B. Parker, and my sister Mary D. Winder."

Sara J. Parker also executed codicils to her 1927 will in 1929 and 1933, but the provisions of the codicils are not in point here. The relevant facts with regard to the persons constituting the brothers and sister of Sara J. Parker, at the time of the death of Mary Donaldson and thereafter to the death of Sara J. Parker, have been stipulated.

On March 20, 1917, the date on which Mary Donaldson executed her last will and testament, the brothers and sister of the whole blood of Sara J. Parker then living were Henry P. Parker, Robert B. Parker, LeRoy Parker and Mary D. Winder. Both parents of these persons were then deceased. All these persons were also living on May 20, 1920, the date of the death of Mary Donaldson. On February 15, 1925, Henry P. Parker died leaving his whole estate to his widow, Eleanor Ridgely Parker, who was named as executrix of his will and who also died May 31, 1925. The will is not in evidence here, and the legatees therein have not been made parties to this case. Henry P. Parker had no children living at the time of his death. It will be noted that both Henry P. Parker and his widow and executrix died prior to the date of the will of Sara J. Parker. Robert B. Parker was living at that time but died on August 2, 1940, shortly prior to the death of Sara J. Parker. Robert B. Parker was survived by his widow, Alice D. Parker, who was named executrix of his will, and also by a son, Robert B. Parker, Jr. The will of Robert B. Parker, Sr., left his entire estate to his widow, who as executrix is one of the claimants in this case.

Sara J. Parker died November 12, 1940, and was survived by one brother, LeRoy Parker, and by one sister, Mary D. Winder; but LeRoy Parker died on February 12, 1941, and his interest in the fund has now devolved upon the plaintiff, Malcolm H. MacBryde, Jr., under his will and by virtue of probate proceedings affecting his estate in Virginia. Mary D. Winder has recently intervened in the case as a claimant of a part of the fund.

The question now presented as to the division of the fund is whether Alice D. Parker as executrix of her husband, Robert B. Parker, is entitled to a share of the fund under the wording of the power executed by Sara J. Parker in her will. The plaintiff, MacBryde, as successor in interest to LeRoy Parker, and Mary D. Winder, the sister of Sara J. Parker, claim that the fund must now be divided equally between them, to the exclusion of any interest of the widow and son of Robert B. Parker who predeceased Sara J. Parker. The point made is that the appointment in favor of Robert B. Parker failed or lapsed upon his death. It is thus seen that the question presented is purely a question of law to be determined on consideration of the wording of the two wills, one of Mary Donaldson, and the other of Sara J. Parker, as affected by the admitted genealogy.

 As the jurisdiction of the court in this case is dependent solely on diverse citizenship, the controversy must be resolved upon consideration of the Maryland statutory and case law. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The primary question is whether Sara's appointment of Robert, who shortly predeceased her, was effective to give his one-third share to his widow as executrix. And here at once the executrix encounters a uniform current of judicial decisions which are succinctly summarized in Simes, Law of Future Interests, Vol. I, § 259, as follows: "If the appointee under a power to appoint by will dies before the donee of the power, the decisions are uniform to the effect that he cannot take under the power. Commonly, it is said that the appointment lapses. If the court followed consistently the doctrine that the exercise of the power is read back into the instrument creating the power, the result would be otherwise. *But it seems reasonable to suppose that a donor who did not permit the donee to make an effective appointment until the donee's*

*death intended the donee to make an appointment only to persons who survived him."* (Italics supplied.)

And in A.L.I. Restatement of Property (Future Interests, parts 3 and 4) § 349, it is categorically stated: "An appointment to a person who is dead is ineffective except as provided by statute (§ 350)".

Comment A reads as follows: "Rationale: The rule stated in this Section is based upon the inferred intent of the donee, and is similar in its application to the rule as to lapses of devises, and legacies to persons who predeceased the testator. In cases where the donee manifests an intent that, if an appointee dies before the appointment is made, he desires the property to pass to the appointee's executors, administrators or heirs, there is an alternative appointment to these persons, but mere words of limitation are not sufficient for this purpose. If the power is special an alternative appointment to executors, administrators or heirs is ineffective unless, as is rarely the case, executors, administrators and heirs are included within the class of objects."

Section 350 above referred to deals with the effect of the so-called anti-lapsing statutes in relation to general, as distinct from special, powers. The power here involved is, of course, a special power to be executed by will only. See same Restatement, § 320(2), and the introductory note as to powers of appointment at page 1808 et seq. It is not contended that the share appointed to Robert, if otherwise ineffective, would be saved or prevented from lapsing by the Maryland Anti-Lapsing Statute. Maryland Code 1939, art. 93, §§ 340, 341; Annotation, 75 A.L.R. 1383; A.L.I. Restatement of Property, Future Interests, §§ 349, 350; Daniel v. Brown, 156 Va. 563, 159 S.E. 209, 75 A.L.R. 1377; Griffiths v. Gale, 12 Sim. 327, 354; Farwell on Powers, p. 267.

I think the Maryland law is in accord with this uniform rule. Smith v. Hardesty, 88 Md. 387, 390, 41 A. 788, affords the closest precedent. In that case the will of the testator gave property to his wife for life with power to devise it among the testator's *children,* or either of them, in such manner as she might deem best, and in default of the exercise of the power, then to his said two daughters by name or to the survivor in the event of either dying without issue before she arrived at the age of 21 years. Both daughters pre-

deceased the wife, one dying without issue and the other leaving a son and daughter, who survived the wife of the testator. In her will the wife attempted to exercise the power in favor of the *granddaughter.* It was held the appointment was invalid and the property passed, in default of proper execution of the power, under the will of the donor of the power. To hold the appointment of a deceased person valid would in effect carry the benefit to his heirs or his personal representatives and thus out of the class authorized by the donor of the power where, as in this case, it is a special power limited to the appointment of a designated class of persons. In Miller on Construction of Wills (a text-book of high authority in Maryland, as it is frequently cited with approval by the Maryland Court of Appeals), it is stated in section 263: "As the intention of the donor of a power must be followed in respect to the persons to whom the property may be appointed, it is obvious that a power to appoint property to certain persons cannot be validly executed by appointing the property to other persons."

This general principle is also recognized in Allder v. Jones, 98 Md. 101, 108, 56 A. 487; Preston v. Willett, 105 Md. 388, 394, 395, 66 A. 257; Balls v. Dampman, 69 Md. 390, 394, 395, 16 A. 16, 1 L.R.A. 545; and Price v. Cherbonnier, 103 Md. 107, 111, 63 A. 209, although these cases did not involve an attempted appointment to a deceased person. Some of the decisions in other jurisdictions, which did involve attempted appointments of deceased persons, which were held invalid, are Daniel v. Brown, 156 Va. 563, 159 S.E. 209, 75 A. L.R. 1377; Herrick v. Fowler, 108 Tenn. 410, 67 S.W. 861; Kennedy v. Kingston, 2 Jacob & Walkers Reports, 431; Maddison v. Andrew, 1 Vesey Sr's. Reports, 58; Freeland v. Pearson, [1867] L.R. 3 Eq. 658; White v. Graves, N.J.Ch., 104 A. 205; Von Behrn, v. Stoeppelmann, 286 Mo. 73, 226 S. W. 875. See also Sugden on Powers, p. 674; 3 Jarman on Wills, 7th Ed., 1778, 1779; 49 C.J. 1265, § 48, p. 1302, § 142; Farwell on Powers (1916) pp. 277, 278. The cases applying the rule make no distinction in this respect between a power to appoint among a class, and a power to apportion shares among a class.

Counsel for the executrix of Robert B. Parker contend that this uniform rule is not applicable in the instant case by reason of what they urge is the proper construc-

...

tion of the will of Mary Donaldson. Their basic contention is that by the will of Mary Donaldson each of the four then living brothers and sister of Sara J. Parker took *immediately* a vested interest in the fund which was defeasible only by the affirmative exercise of the power of appointment of shares conferred on Sara J. Parker, the life tenant; and that the effect of the exercise of the power by Sara J. Parker was to exclude the then (in 1927) deceased brother Henry, but effective in favor of LeRoy, Robert and Mary; and therefore Robert's estate is now entitled to one-third of the trust fund. It is contended that the interests of the three brothers and the one sister of Sara J. Parker living at the death of Mary Donaldson, were vested interests subject only to be divested, and not contingent interests only. Or, otherwise stated, that if the bequest be treated as a gift to a class, the class "opened" immediately upon the death of Mary Donaldson and was not postponed as to its "opening" until the death of the life tenant Sara J. Parker, that is to say, it was not the intention of the testatrix to imply a condition of survival of the brothers and sister until the death of the life tenant. See Article on Alienability and Transmissibility of Future Interests in Maryland, by Prof. Reno, Vol. II, Md. Law Rev. 112 et seq.

It is also contended that the gift in remainder in Mary Donaldson's will "to her brothers and sister of the whole blood" was not technically a gift to a class, but rather to four designated individuals because at that time the parents of Sara J. Parker were deceased and therefore there could be no fluctuation in the class by increase in number. See Miller on Wills, § 68, and note 2, p. 189; Boulden v. Dean, 167 Md. 101, 106, 173 A. 26. Attention is also called to the Maryland Act of 1822, ch. 162, now Art. 50, § 14 of the 1939 Code, which changed the rule at common law that gifts to a class created a joint tenancy and made the takers tenants in common. Preston v. Clabaugh, 90 Md. 707, 709, 45 A. 887. But nevertheless it is contended that even if the gift was strictly to a class the result was the same. Miller on Wills, § 74, p. 210, Vol. II, Md. Law Rev. 89; Robinson v. Mercantile Trust Co. of Baltimore, Md. 1942, 24 A.2d 299, 138 A.L.R. 1427.

Counsel for the estate of Robert B. Parker also invoke the doctrine of a series of cases of which Lambert v. Thwaites,

[1866] L.R. 2 Eq. 151, is the leading case. In that case estates were settled upon a husband and wife for life, and upon the death of both "upon trusts to make sale and * * divide the sum amongst all and every child of H * * * in such shares and proportions * * * as shall be directed by his will. One of H's seven children predeceased him and H died *without executing the power.*" It was held that all seven children took the estate, the court saying: "The general principle seems to be this: If the instrument itself gives the property to a class, and gives a power to A to appoint in what shares and in what manner the members of that class shall take, the property vests until the power is exercised, in all the members of the class, and they will all take *in default of appointment;* but if the instrument does not contain a gift of the property to any class, but only a power to A *to give it,* as he may think fit, among the members of that class, those only may take in default of appointment who might have taken under an exercise of the power. In that case the court implies an intention to give the property in default of appointment to those only to whom the donee of the power might give it." (Italics supplied.)

See also Miller on Wills, § 71, note on page 199, quoting Tiffany on Real Property, § 330 (§ 706 of 3d Ed.); Farwell on Powers, 3d Ed., pp. 534, 536, 537. This line of cases is based upon a narrow verbal distinction between the language of a will which makes an immediate vested gift to a class, subject to the exercise of a power, and language which creates in the donee a power of new disposition; that is to say, does the will of the donor itself make the gift or confer upon the donee the power to make the gift? The distinction is obviously a fine one and no Maryland case applying it has been referred to. In passing it may be noted, if of any significance, that the donee of the power in this case, Sara J. Parker, in exercising the power refers to the fund in this language: "which I was to enjoy for life with the *right of disposition* to my brothers and sister at my death." (Italics supplied.)

This would seem to indicate that Sara J. Parker at least interpreted the language of Mary Donaldson's will as giving to her, Sara, a new power of disposition rather than merely distributing the fund among those to whom Mary Donaldson had herself effectively and immediately made a

gift. It is also probably of some significance that Sara in exercising the power did not mention her brother Henry who had died prior to the date of Sara's will. It is more importantly to be noted that the principle of Lambert v. Thwaites, supra, applies only in the event of a failure to exercise the power of appointment.

In support of the contention that the gift to the brothers and sister (which for convenience will be some times referred to as a gift to a class) created a vested remainder subject to be divested and not merely a contingent remainder, counsel submit an extensive argument based on the citation and analysis of many Maryland cases. Apart from the effect of the inclusion of the power it seems fairly clear that whether the gift be regarded as technically one to a class or not, the remainder here was vested subject to be divested by the power. Stahl v. Emery, 147 Md. 123, 127 A. 760, is admittedly to the contrary, but in the latest Maryland case upon the subject (Robinson v. Mercantile Trust Co., Md., 24 A.2d 299, 138 A.L.R. 1427) a case quite like the present in the wording of the will (with the exception of the power in this case) Stahl v. Emery is in effect overruled in this respect as a dictum, and the rule of construction in favor of the earliest possible vesting of an estate, as evidenced by many Maryland decisions, is again applied. As to the effect of the inclusion of the power in determining whether it was the intention of Mary Donaldson to postpone the vesting of the gift until the death of the donee of the power, it is said that at one time it was thought that this was the necessary effect of the inclusion of the power, but that this idea had been overruled by the later case of Doe v. Martin, 4 T.R. 39. In Mercantile Trust Co. v. Bergdorf & Goodman Co., 167 Md. 158, 173 A. 31, 34, 93 A.L.R. 1205, Judge Sloan said: "And the immediate vesting of the remainder was not affected by the fact that the estate in remainder so held might be defeated by the exercise of the power of appointment. Pope v. Safe Deposit & Trust Co., 163 Md. 239, 247, 161 A. 404; Myers v. Safe-Deposit & Trust Co., 73 Md. [413], 415, 21 A. 58; Miller's Eq.Pro. 680." See also Miller on Wills, 220.

But assuming that these contentions are sound, that is that the gift to the class was vested subject only to be divested by the exercise of the power, and that the bequest was not to a class technically, and that the doctrine of Lambert v. Thwaites would be followed in Maryland, it still does not result that the appointment of Robert was valid in view of the uniform rule to the contrary including the Maryland cases. Counsel for the estate of Robert Parker have not been able to cite any decision either in Maryland or elsewhere which would support their attempted distinction of this case from the uniform current of authority in Maryland and elsewhere to the contrary. And in none of the numerous cases examined holding invalid the appointment of a deceased person, under many wills of various phraseology, has there been noted any suggestion that the nature of the gift, subject to the power, whether vested or contingent, affects in any way the effectiveness of an appointment of a deceased person, in the exercise of a special testamentary power, in favor of a class which does not include the estate of a person dying before the donee of the power. It may seem inconsistent to hold that the *presumed* intent of Mary Donaldson was to "open" the class at *her* death, in the event of non-appointment by Sara, but to limit Sara, if she exercised the power, to the appointment of members of the class living at Sara's death. But we must choose between two alternative rules of construction, the one favoring early vesting and the other specifically excluding the appointment of deceased persons. The rule of early vesting is only a rule of construction, and not a rule of property. Grace v. Thompson, 169 Md. 653, 665, 182 A. 573, 103 A.L.R. 589. Here the choice must be in favor of the uniform rule in relation to powers of appointment. In another aspect there is no necessary inconsistency because the rule of early vesting only creates in this case a vested remainder subject to be divested, and it was divested by the exercise of the power. Therefore we are directly concerned only with the rule that is applicable where the power is exercised. Here it was exercised, and the argument of counsel for the estate of Robert Parker must fail because it is in essence predicated upon a line of logic which ends when the power is executed. The exact question presented is thus seen to be, what is the effect of the power as executed and not what might have been the effect if the power had not been executed. And the applicable law renders the appointment of Robert to a share

ineffective. The further question is then presented whether the naming of Robert in the will of Sara J. Parker is to be treated under the circumstances (1) as a mere nullity, thus giving the whole of the fund to the others named in equal shares, or (2) as a partial non-execution of the power, with the result of (a) making the exercise of the power wholly invalid so that the *whole* fund devolved upon the four interests vested at the death of Mary Donaldson, or (b) only partially invalid with the result that only the one-third share appointed to Robert so devolved; or (c) with the result that, as the appointment could only validly be made by Sara to members of the class living at her death, the one-third unappointed share must also be equally divided between the two survivors at her death.

This is a question which is not free from difficulty of solution under the Maryland decisions, there being no Maryland case that presents a similar situation. The general law with respect to the effect of a partially invalid exercise of special powers is stated in the A.L.I. Restatement of Property-Future Interests, ch. 25, and particularly in sections 351, 360, 362, 365, 368 and 369. Section 362 is as follows: "Where one part of an appointment is ineffective but another part would, if standing alone, be effective, such other part is given effect unless (a) the two parts are so mingled that it is impossible to fix the line of division between them, or * * * (b) the donee's scheme of disposition is more closely approximated by allowing both parts to pass in default of appointment than by treating as valid the latter part of the appointment and allowing only the property covered by the former part to pass in default."

The Maryland decisions are in substantial accord. The most fully considered case is Graham v. Whitridge, 99 Md. 248, 279, 280, 57 A. 609, 613, 58 A. 36, 66 L.R.A. 408. In that case the partial invalidity of the exercise of the power was due to the fact that certain remainders after life estates violated the rule of perpetuities. It was held that the appointment to the life estates was good, but that the remainders were ineffectively appointed and therefore passed under other clauses of the donor's will. And it was further held that appointees of the life estates also entitled to take a share under the donor's will were not required to "elect" between the two benefits. In the course of the opinion the late Chief Judge McSherry, whose depth of legal learning and power of forceful exposition was well known in Maryland, referred with approval to Sugden on Powers, Vol. 2, p. 102, "to the effect that the well-appointed portions will stand, and the appointees of such well-appointed portions will not be excluded from shares of the unappointed part if they belong to the class which takes".

The general rule is also recognized in Myers v. Safe-Deposit & Trust Co., 73 Md. 413, 21 A. 58, and in Reed v. McIlvain, 113 Md. 140, 77 A. 329, in both of which cases, however, the exercise of the power was held wholly invalid because the donee, by blending her individual estate with that over which she had the power of appointment, and departing substantially from the limitations imposed by the donor in making the appointment, created such a confusing and unequal distribution that it was regarded as entirely inconsistent with the donor's general testamentary scheme. It was suggested here by counsel for the estate of Robert Parker that, if the appointment of Robert was invalid, the exercise of the appointment might be held invalid as a whole as in these Maryland cases; but I do not understand that this argument was seriously pressed and I think there is no reasonable basis for accepting it as sound. The reasons for the result in Myers v. Safe-Deposit & Trust Co., supra, are clearly pointed out by Chief Judge McSherry in Graham v. Whitridge, and the facts in the Myers and Reed cases are so dissimilar from the instant case that there is no proper basis for holding the exercise of the power in this case wholly invalid. See also In re Turner, [1932] L.R. Ch.D. Vol. I, pp. 31, 37.

But, as has been observed, it is to be noted that no Maryland case has dealt with this particular factual situation, and I fail to find in the Restatement any parallel case. The instant case is a very particular one in that we have the following factors to deal with in considering the effect of the appointment of Robert; (1) that Robert survived the testator but (2) predeceased the donee of the power; (3) that the power was a special power to be exercised by will; (4) that Robert was one of the class who would have taken in default of the exercise of the power; (5) that the appointment included Robert and his surviving brother and sister *in equal shares;* and (6) that only these two survivors could have properly been included in the appointment, and (7) they also had

vested interests subject only to the power; and (8) in default of appointment those entitled to take were to take in equal shares. No similar American case has been noted. Very nearly this precise situation, however, did arise in some English cases. In Kennedy v. Kingston (Ch. 1821) 2 Jacob & Walker's Rep. 430, a testator bequeathed a fund to A, "for her life, and at her decease to divide it in portions as she shall choose to her children; and in case she dies before me, I leave the sum to be equally divided among her children". At the time A had four children, two of whom predeceased her and two survived. By her will A appointed a part of the fund to one of her children who predeceased her, and the balance to the surviving children. It was held that the children of A *living at her death* were the only objects of the power and as such entitled to the share lapsing by the death of a child to whom it had been appointed.

The Master of the Rolls (at that time Sir Thomas Plumer) said, in considering the will of the donor: "The term children is general, but as the power is to be executed at her decease, it must be for the benefit of those then capable of taking. It is, therefore, necessarily confined to children in existence at the time of her death. Therefore, none but the two who have survived can take under the power; they are clearly entitled to the sums appointed to them. The difficulty is with respect to the part as to which there is, in the events that have happened, a non-execution. There is no gift there in default of appointment, in express terms; but if the mother had died without making any appointment, would not the children surviving her have been entitled; would they though certainly objects of the testatrix's bounty, have taken nothing? Upon that question, the case becomes one of that class where the objects of the power are definite, and the power is only to appoint the proportions in which they are to take, without excluding any; for here the mother must have given a share to each; she could not have made an exclusive or an illusory appointment. The power, therefore, must be understood as tacitly including a provision for an equal division of the fund amongst the objects, in the event of no appointment being made. The two who survived would, therefore, be the only persons to take; they only could take under an appointment, and if no appointments were made, they would take by necessary implication.

It will be noted the main grounds of the decision were (1) only survivors of the donee could take under the power; (2) in default of the exercise of the power there was an implied gift to the survivors in equal shares, and (3) the survivors therefore took the badly appointed share in equal parts. It will be noted that the opinion makes reference to the fact that the power was "nonexclusive" and therefore the donee could not make an "illusory" appointment, but must make a substantial appointment to each surviving appointee. But this consideration seems unimportant now, and did not occur in later cases with the same result. The decision in the particular case was made at a time when the Court of Chancery was much troubled to determine what constituted an "illusory" appointment, a difficulty which was later removed by statute. Farwell on Powers, 3d Ed., pp. 424, 425; 45 Har. Law Rev. 938, 939. See also Vol. I, Simes on Future Interests, § 275; and Allder v. Jones, 98 Md. 101, 56 A. 487; Tiffany on Real Property, 2d Ed., Vol. I, § 328; Miller on Wills, § 263, pp. 748, 749, notes.

A similar ruling in the similar case of Freeland v. Pearson [1867] L.R. 3 Eq. 658, was reached by the then Master of the Rolls, Lord Romilly. There the testator gave his property to his wife for life and "at her decease, to make such distribution or disposal of his then remaining property among his children as might seem just and equitable, according to her discretion." It was held that this was a testamentary power to the wife to appoint in favor of the testator's children living at *her* death. The testator was survived by his widow and eight children. One of the eight children shortly predeceased his mother. By her will she made appointments for the benefit of all eight children including the one of the eight who was living at the date of the will but who shortly predeceased her. The question was as to what happened to his share under the will. After reviewing prior decisions and particularly Kennedy v. Kingston, supra, and Reid v. Reid, 25 Beav. 469, the Master of the Rolls said: "I am of the opinion that I must follow those two cases, and therefore make a declaration that Mrs. Lindsey could only exercise the power by will in favor of the children who survived her, and that the share appointed by her to Benjamin Augustus Lindsey goes, in default of appointment, to the surviving children.

As to this share, the question was raised whether the 33rd section of the Wills Act applies but I think that is quite settled by the case of Griffiths v. Hale, (12 Sim. 327, 354), and that though that section would apply to any property which Mrs. Lindsey had of her own which she had power to dispose of, it does not apply to that which she took for life under her husband's will, with power of appointment among his children."

Other quite similar cases are Walsh v. Wallinger (1830), 2 Russ. & M. 78, 39 Eng. Reprint, 324; and In re Susanni, (1877) 26 Week Rep. (Eng.) 93; and see still other cases to a generally like effect annotated in 115 A.L.R. 1470.

■ So far as I can find, these English cases have not been overruled or disapproved. The nature of the power in those cases and in this case is commonly spoken of as a power in trust. See 115 A.L.R. 1470; Farwell on Powers, p. 537. The principle of these cases has apparently been adopted and approved by A.L.I. Restatement of Trusts, Vol. I, § 27 (g), which reads in part:

"(g): *Time of determination of membership of the class:* Where the power is conferred to appoint property among the members of a definite class, and a trust is created for the members of the class *or* there is an express or implied gift in default of appointment to the members of the class, if the donee of the power fails to exercise it, so that the members of the class are entitled to the property in equal shares, the membership of the class is determined as of the time when the appointment could have been made.

"If the power could have been exercised only by the will of the donee of the power, such members of the class *and only such members* are entitled to share in the property as composed the class *at the time of the death of the donee of the power,* since the donee could have effectively appointed only to the members of the class in existence at the time of his death." (Italics supplied.)

It may be suggested that these English cases, or some of them, are not identical with the instant case in that it may be said the interests of the members of the class at the time of the death of the testator were not vested subject to be divested as we have found to be the case by Mary Donaldson's will, subject to the exercise of the power. But this distinction is not important after the power has been exercised and the question becomes, what is the effect of the disposition made by the power? It was so held in Herrick v. Fowler, 1902, 108 Tenn. 410, 67 S.W. 861, 863. After there adverting to the two classes of cases, that is, where the property is vested at the death of the donor at the time of his death, and where it becomes vested only at the death of the donee, the court said: "We are of opinion there is no difference in results in the two classes of cases, where the power is validly and actually executed by the donee, and when this is done the title and beneficial interests vest only in those who are named by the donee of the power, and are devested out of all others. What the result may be when the power is not executed, we need not consider, as that case is not presented in this record."

In that case the donor's will left property to her husband for life with power to leave it by will "between my children, as he may see proper". At the death of the donor there were three children, two of whom died before the donee. By his will he left the property to the one surviving child but charged with a pecuniary sum in favor of children of a deceased child who had died during his lifetime. It was held that the charge in favor of the grandchildren was simply void and the whole property passed to the surviving child, free of the charge. That is, the unauthorized charge was treated as a nullity.

■ In deciding what is the proper disposition of the share attempted to be appointed by the power to Robert B. Parker, the function of this court "is to ascertain what the state law is, not what it ought to be". Klaxon Co. v. Stentor Co., 313 U.S. 487, 497, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477. See also Powell v. Maryland Trust Co., 4 Cir., 125 F.2d 260. It is quite impossible to say with certainty what is the law of Maryland on this particular point as there is no precedent for it in this State. The general principles of the Maryland cases above reviewed should be followed in so far as they afford any guide to the proper decision which, of course, should not be based merely upon speculation as to what the Maryland Court would decide. The best conclusion I can reach is that in this particular situation these English cases represent the law in this State upon the subject as they are the only prior judicial decisions involving similar situations, and were decided on general principles of English law of wills and powers unaffected by any particular statute, and are not inconsistent with

the principles of Maryland decisions on the same subject. It is also well known that our Court of Appeals frequently quotes, or follows, the well-considered English cases when not in conflict with the well-established general American law on the subject. And it is particularly noteworthy in this connection that on this very subject of the effect of a partially invalidly executed power, the decision in Graham v. Whitridge, 99 Md. 248, 287, 57 A. 609, 58 A. 36, 66 L.R.A. 408, was based very largely (with respect to the point as to election) on the early English case of Bristow v. Ward, 2 Vesey, Jr., 350. I therefore conclude that these English cases should be followed, with the result that the whole fund in this case should be awarded to the brother and sister who survived Sara J. Parker the donee of the power, in equal shares.

This conclusion is fortified by another consideration. The main guide for courts in dealing with the disposition of property by will, is to follow the intention of the testator where it can be determined from the language of the will as applied to the subject matter. And it is said with respect to the execution of testamentary powers that the intentions of both the donor and donee of the power should be considered, in reaching the result. In ascertaining the intention of Mary Donaldson we must bear in mind the rule of construction that is uniformly applicable to the special testamentary power that she therein gave to the donee, that is, her presumed intention that the power if exercised should be exercised only in favor of appointees living at the death of the donee.

And when we consider the intention of the donee in exercising the power, we find that she acted consistently with this presumed intention of Mary Donaldson in not naming Henry as an appointee as he had predeceased her. And in appointing LeRoy, Robert and Mary, all then living, she closely followed the equality of division which Mary Donaldson had indicated should apply in default of an appointment. We may also bear in mind that the brother Robert long survived the · date of execution of Sara's original will and also the two codicils thereto, one in 1929 and the other in 1933, and in fact Robert died on August 20, 1940, while Sara died on November 12, 1940. It is at least inferable, although not controlling in this case, that· if Sara had made her will after Robert's death, she would not have included him as an appointee

just as previously she did not include Henry after his death. If we treat the one-third share appointed to Robert as passing in default of appointment under the will of Mary Donaldson, we have a resulting situation which was clearly not expressly contemplated by her. It was clearly her intention to give Sara power to fully dispose of the fund by appointment, and it is equally clear that Sara intended to do so. If Robert's share is treated as a default in the apportionment to the extent of one-third, it would be necessary to award it under Mary Donaldson's will in four equal parts, that is, one-twelfth to the estate of Henry; one-twelfth to the estate of Robert; one-twelfth to the plaintiff as successor in interest to LeRoy's estate, and one-twelfth to Mary. It is apparent that this is not consistent with the evident intention of Sara who clearly meant to exclude Henry. The alternative is to treat the ineffective appointment of Robert as in effect a nullity and award the fund *in equal parts* to the shares of LeRoy and Mary who alone constituted the permissible appointees within the scope of the special power. Or perhaps it would be more artificially correct to say, as in the treatment of the subject by the English cases, that the badly appointed share should be awarded to the survivors at the death of the donee in equal parts, as they were the only ones entitled to take under the power. If the will of Sara had appointed the fund as to a certain definite sum of money to Robert, it might have been necessary to hold that there was a failure to exercise the power as to that part, and that it therefore devolved under the will of the donor. But we do not have that particular condition here, nor the case of a wholly invalid appointment. Cf. A.L.I. Restatement, Future Interest, § 349, Illustration 2 (I). The result in this particular case is in accordance with the English cases, *not inconsistent with* any general principles of Maryland law upon the subject, and more fully carries out the implied intentions of both the donor and donee than the prior alternative would do.

The attention of counsel is called to the fact that the estate of Henry Parker, who died before Sara and is not named in her will, as an appointee, is not represented by any party to this case. It appears that his wife who was named executrix in his will also predeceased Sara Parker. His will has not been put in evidence in this case, and it does not appear who are the legatees,

and apparently there is now no testamentary representative of the estate. If, contrary to the conclusion herein reached, it should hereafter be held in any proper proceeding that some part of the whole fund now on deposit with the clerk of the court passes under the will of Mary Donaldson to the estate of Henry Parker, the parties entitled thereto would presumably not be bound by the judgment in this case as the estate is not represented by any party to the case. In this situation it may be necessary to withhold from present distribution one-twelfth or possibly one-fourth of the fund pending further procedure in the case.

Counsel are requested to promptly submit for consideration the appropriate form of judgment to be entered in the case.